## GREAT ATLANTIC & PACIFIC TEA CO. v. A. & P. CLEANERS & DYERS, Inc., OF WASHINGTON, PA.

### No. 2794.

District Court, W. D. Pennsylvania.
June 14, 1934.

John A. Metz, of Pittsburgh, Pa., for plaintiff.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge.

This is an equity suit in which the plaintiff is seeking to enjoin the defendant from using a trade-mark or designation of its business, comprised of the letters "A. & P." in distinctive form, color, and design. The case was heard on bill, answer, and proofs. From these we find the following facts.

Findings of Fact.

(1) The plaintiff is a corporation of the state of New Jersey and is a citizen of that state.

(2) The defendant is a Pennsylvania corporation and a citizen of that state.

(3) The amount in controversy, exclusive of interest and costs, is in excess of $3,000.

(4) The plaintiff has, since the year 1859, been continuously engaged in the business of merchandising by retail, teas, coffees, fruits, vegetables, and foodstuffs in stores, commonly known as A & P Stores.

(5) That for a period of thirty years and upwards, the business of the plaintiff company has been conducted and advertised under and in connection with a peculiar distinctive insignia or trade-mark illustrated and shown in Exhibits 3 and 4, and also in having uniform store fronts on which this insignia or trade-mark is the most salient feature.

(6) The defendant carries on a business of dyeing and cleaning, and was incorporated under the name of A. & P. Cleaners & Dyers, Inc., on May 22, 1931. Prior to that time, from about the year 1929, until the incorporation of the defendant, David Resnick used the same name in the dyeing and cleaning business in what is known as the Pittsburgh district. The defendant and its predecessor, David Resnick, about the year 1929, established in their store windows and in their advertising the same trade-mark as displayed by the plaintiff in its advertising and on its store fronts.

(7) This simulation was deliberate and intended. The evidence clearly disclosed that Resnick directed the sign painters, Kramer & Wolf, to make these signs exact copies of the plaintiff's insignia.

(8) Visual comparison of the insignia of the plaintiff with that of the defendant, exemplified in Plaintiff's Exhibit 5, reveals exact similarity in shape, color, design, and peculiar lettering.

(9) The plaintiff, on May 27, 1930, notified David Resnick, who later became the president of the defendant corporation, that the use of this insignia must be discontinued as a violation of the plaintiff's rights.

(10) There were instances in which employees of the defendant company at branch stores of the defendant company represented to customers that the defendant company was in fact a branch of, or connected with, the plaintiff company.

(11) The impression of the public in Pittsburgh district is that the A. & P. Cleaners & Dyers, Inc., is a branch of the A. & P. Tea Company, as evidenced by the fact that the plaintiff has received telephone calls, two or more a week, during the past two or three years, from persons who wished to complain to the plaintiff of the work and service of its cleaning and dyeing branch. In addition, persons have called at the stores of the plaintiff to leave articles to be cleaned, and were much surprised when informed that the Tea Company was not in the cleaning and dyeing business, and had no connection with the defendant company. This confusion was further evidenced by the testimony of over forty witnesses that they dealt with the defendant company under the belief and impression produced by the simulation of name, store front, advertising, and trade-mark or insignia; that the Cleaning & Dyeing Company is a branch of, or connected with, the Tea Company.

## Conclusions of Law.

Under these facts, we conclude as a matter of law that the plaintiff is entitled to injunctive relief prayed for in its bill of complaint, and is entitled to recover the cost of this action.

## Opinion.

■ We are clearly of the opinion, from the evidence in this case, that there was a premeditated design on the part of the defendant and its predecessor Resnick to deceive the public into believing that the defendant corporation was a branch of the A & P Tea Company in order to gain the advantage that might be derived from the advertisements and good will of the plaintiff. Such a situation undoubtedly presents a strong case for equitable relief.

Judge Learned Hand, in Yale Electric Corporation v. Robertson (C. C. A.) 26 F. (2d) 972, 974, very aptly states the modern doctrine applied to cases of this kind: "However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

Our attention has been called to the opinion of the Circuit Court of Appeals of the Third Circuit in Certain-Teed Products Corporation v. Philadelphia & Sub. Mortgage G. Co., 49 F.(2d) 114, in which the Circuit Court affirmed the judgment of the District Court in refusing an injunction against the defendants who were using the phrase in its advertising, "A guaranteed mortgage is a certainteed income," when the plaintiff was dealing only in roofing and other building materials. In that case, in addition to there being no similarity of product involved, the court found that there was no fraud, deception, or confusion in the minds of the public. In the instant case, however, we have that confusion, and can arrive at no other conclusion than that the plaintiff deliberately intended to avail itself of the good will of the plaintiff corporation in its business and took advantage of the advertising of the plaintiff.

■ It was argued that the plaintiff had been guilty of laches in starting this suit. The plaintiff notified Resnick of its objection to his use of the A & P insignia on May 27, 1930, but did not file its bill of complaint in the instant case until May 31, 1933. We cannot see that mere delay in bringing suit would deprive the plaintiff of its remedy by injunction. There is no evidence of acquiescence by the plaintiff in the use by the defendant of its insignia, nor was there any ground upon which one could lay an estoppel. It may be that the plaintiff could not recover damages, but in the instant case it is only seeking an injunction, and we believe is clearly entitled to it.

■ The only further point that needs to be touched upon is the question of jurisdiction. The plaintiff, in its bill of complaint, does not allege that the amount in controversy exceeds the sum or value of $3,000. However, the proofs in this case clearly show that the value to the plaintiff of its right to the exclusive use of its trade-name and good will was in excess of $3,000. The immediate pecuniary damage is not the test of the value of the matter in dispute, but the value to the complainant of the business to be protected. Prest-O-Lite Co. v. Bournonville (D. C.) 260 F. 440, 441; Local No. 7

452

of Bricklayers', etc., Union v. Bowen (D. C.) 278 F. 271, 273; Lambert v. Yellowley (C. C. A.) 4 F.(2d) 915, 918.

Let a decree be submitted in accordance with this opinion.