## GREAT ATLANTIC & PACIFIC TEA CO.
### v. A. & P. RADIO STORES, Inc.
#### No. 9553.

District Court, E. D. Pennsylvania.
Sept. 14, 1937.

704

Sylvester J. Liddy, of New York City, and Robert C. Walden, of Philadelphia, Pa., for plaintiff.

Robert Levin and Philip Dorfman, both of Philadelphia, Pa., for defendant.

Sur Pleadings and Proofs.

MARIS, District Judge.

This is a suit in equity filed by the Great Atlantic & Pacific Tea Company seeking an injunction restraining the defendant from using the letters "A & P" in its corporate name and in its business. From the evidence I make the following special

### Findings of Fact.

The plaintiff is a corporation of the State of New Jersey, which has been for many years engaged in the business of selling food products and household appliances. It has more than 14,000 retail stores, 2,018 of which are in the State of Pennsylvania, and 325 of them in the City of Philadelphia.

The plaintiff company has for many years been known colloquially to the public as the "A & P" Company and its retail stores as "A & P" stores. It employs on its store windows a circular insignia consisting of the letters "A & P" and the words "Established 1859" within the circle, the circle in turn being superimposed upon a bar within which are the words "Where economy rules." The plaintiff also has extensively used the letters "A & P" as a brand or trade-mark for various of its products.

The plaintiff has expended many millions of dollars for advertising its business, through the newspapers, by means of radio programs, and in other ways. Its sales in the Philadelphia district for the years 1932 to 1936, inclusive, amounted to $224,251,000. The value of its trade-name "A & P" is far more than the jurisdictional sum of $3,000.

The defendant was incorporated under the laws of Pennsylvania in March, 1936, and began business in April of that year. The letters "A & P" in its name are the initials of the surnames of Messrs. Aronberg and Podolsky, who were its incorporators and are the active managers of its business. At the time its name was selected, Aronberg and Podolsky had in mind the use of the trade-name "A & P" by the plaintiff and unquestionably fully understood its great value.

The defendant is engaged in the business of selling new and secondhand radios, washing machines, and electric refrigerators. It employs on its store windows a circular insignia with the words "A & P" within the circle and the word "Radio" within a bar or banner superimposed on the circle. It has also used the letters "A & P" in connection with the sale of its merchandise. Shortly after it started business, it used the following slogans in its store windows: "The name A & P assures you satisfaction." "A & P reputation deserves your patronage." The use of these two slogans was discontinued, however, after the plaintiff protested.

There was no credible evidence of actual confusion of the public mind by the use by the defendant of the letters "A & P."

### Discussion

This is a suit to restrain unfair competition. There is diversity of citizenship, and the court has jurisdiction since the matter in dispute is the plaintiff's trade-name and good will, the value of which is vastly in excess of $3,000.

The plaintiff seeks to restrain the defendant from using its trade-name "A & P" in connection with its business of selling radios, washing machines, and electric refrigerators. None of these articles is sold by the plaintiff. Consequently the first question presented is whether the owner of a nationally known and valuable trade-name may restrain its use by a third party in connection with a noncompeting business. It is quite clear that in such a case the defendant is not actually diverting custom and trade from the plaintiff. Such an injury, however, is not the only one which may result. As was said by Mr. Justice Shientag in Philadelphia Storage Battery Co. v. Mindlin, 163 Misc. 52, 296 N.Y.S. 176, 178: "The normal potential expansion of the plaintiff's business may be forestalled. * * * His reputation may be tarnished by the use of his mark upon an inferior product. * * * A false impression of a trade connection between the parties may be created, possibly subjecting the plaintiff to liability or to the embar-

rassments of litigation, or causing injury to his credit and financial standing."

The underlying principle involved in these cases was well put by Circuit Judge Learned Hand in Yale Electric Corporation v. Robertson (C.C.A.) 26 F.(2d) 972, 974, as follows: "However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask."

It is on the basis of this developing conception of unfair competition that the courts have repeatedly restrained the use of similar trade-marks on noncompeting goods. See Walter v. Ashton, 1902, 2 Ch. 282; Aunt Jemina Mills Co. v. Rigney & Co. (C.C.A.) 247 F. 407, L.R.A.1918C, 1039, cert.den. 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540; Aluminum Cooking Utensil Co. v. Sargoy Bros. & Co. (D.C.) 276 F. 447; Vogue Co. v. Thompson-Hudson Co. (C.C.A.) 300 F. 509; Wall v. Rolls-Royce of America (C.C.A.) 4 F.(2d) 333; Hudson Motor Car Co. v. Hudson Tire Co. (D. C.) 21 F.(2d) 453; Duro Co. v. Duro Co. (C.C.A.) 27 F.(2d) 339; Standard Oil Co. v. California Peach & Fig Growers (D.C.) 28 F.(2d) 283; Del Monte Special Food Co. v. California Packing Corporation (C. C.A.) 34 F.(2d) 774; Waterman Co. v. Gordon (C.C.A.) 72 F.(2d) 272; Alfred Dunhill of London v. Dunhill Shirt Shop (D.C.) 3 F.Supp. 487; Great Atlantic & Pacific Tea Co. v. A. & P. Cleaners & Dyers (D.C.) 10 F.Supp. 450.

I am satisfied that in the present case defendant's name was chosen with an eye to the value of the letters "A & P" as the plaintiff's trade-name because of the widespread acquaintance of the buying public with them as such. It undoubtedly hoped to appropriate some of that value to itself. This was an unfair interference with the plaintiff's trade-name, and it is clear under the cases to which I have referred that the court has authority to en-

join it. It is equally clear that the granting of relief need not be conditioned upon the showing of actual deception of the public. Gehl v. Hebe Co. (C.C.A.) 276 F. 271.

The defendant, however, while not seriously controverting the legal principles to which I have referred, argues that they are not applicable to the present case for a number of reasons. The first is that since the plaintiff's corporate name is "The Great Atlantic & Pacific Tea Company," it has no legal right to do business in Pennsylvania under the name of the "Great A. & P. Tea Company" or "A & P Food Stores" or under the initials "A & P." It may be admitted that a corporation may not lawfully transact business under an assumed or fictitious name and that in Pennsylvania a corporation is required to engage in business only under its proper corporate name. This is not to say, however, that a corporation may not use a trade name or what may be described as a colloquial name or nickname. It is obviously impossible for a corporation having a name as long as that of the plaintiff to prevent the public from shortening it or using its initials as a nickname. This is a very widespread practice, particularly in connection with large enterprises such as railroads. Thus in Philadelphia, the Philadelphia Rapid Transit Company, which operates the local street railways, is universally referred to as the P. R. T. Furthermore, the adoption and use by the public of such a nickname as a trade name is unquestionably of real value to the company.

As to this Nims on Unfair Competition and Trade-Marks (3d Ed.) says (p. 246): "Corporate names or parts of these names when used to designate goods or business houses, or as trade 'nicknames,' are trade names pure and simple, in most instances, and can be protected as such. The commercial nickname, or abbreviated name, is often more valuable, far better known, and more carefully guarded from use by rivals than the formal or full name from which it is taken. Hence it is that unfair competition applies to nicknames of corporations. 'U. M. C.' for Union Metallic Cartridge Co.; 'Winchester' for Winchester Repeating Arms Company; 'Equitable,' for Equitable Life Assurance Society; 'C. B. & Q.'; for Chicago, Burlington & Quincy; 'B. & A.,' for Boston & Albany, are instances of such nicknames. One

hears or sees the full corporate name used seldom in comparison to the number of times the nickname is used."

It follows that the plaintiff has not overstepped its legal rights in using the letters "A & P" as a nickname in its business. It is equally clear that its use of these letters as a trade-mark is also lawful.

▨ The defendant argues, however, that the plaintiff by its registration of the trade-mark "A & P" in the United States Patent Office secured no legal right to the use of these letters as a trade-mark or name. This it says is because the plaintiff is not engaged in interstate commerce and consequently secured no rights under the act of Congress (15 U.S.C.A. § 81) which authorizes the registration of those marks only which have been used in interstate or foreign commerce. It is a sufficient answer to this contention to point out that since this court has jurisdiction because of diversity of citizenship, it is immaterial whether plaintiff's trade-mark was used in interstate commerce or was registered under the act of Congress. The title to a trade-mark is independent of its registration. United States Ozone Co. v. United States Ozone Co. (C.C.A.) 62 F.(2d) 881. The real question is whether the mark was actually adopted and used by the plaintiff and as to that there can be no doubt in this case.

Defendant next urges that it has merely used an abbreviation of the surnames of its incorporators and sole stockholders, and that this it is entitled to do regardless of the plaintiff's rights. It will be observed, however, that the defendant did not use the names "Aronberg and Podolsky." It is obvious that the purpose of defendant's incorporators was not to acquaint the public with the fact that these men were interested in its business. If this had been their purpose their surnames would have been used. I am satisfied that, on the contrary, their intention was to appropriate whatever value they could of the plaintiff's tradename "A & P" and to excuse this action on the ground that these initials represented their own surnames. This, however, is not a sufficient excuse under the circumstances. Great Atlantic & Pacific Tea Co. v. A. & P. Meat Market, 138 Misc. 224, 244 N.Y.S. 535.

▨ In this connection it should be noted that there is a distinction between the right of an individual to use his name in his personal business and the right to use an individual name or initial in a corporate name. In the case of a corporation there is no right to use a corporate name containing the individual name of an incorporator if such use will infringe upon a prior right or a well known corporate name. Nims on Unfair Competition and Trade-Marks (3d Ed.) p. 248; R. W. Rogers Co. v. Wm. Rogers Mfg. Co. (C.C.A.) 70 F. 1017; Clark Thread Co. v. Armitage (C.C.A.) 74 F. 936. In other words, while an honest use of a family name in a personal business will not be enjoined, honest motives and absence of fraudulent intent are no defenses where the licensing of a name to a corporation is involved. This is for the reason that a corporation may select any name not already appropriated, whereas there is a natural inclination on the part of an individual to trade under his own name.

In the present case, as we have seen, the defendant's incorporators did not use their own names but merely their initials, and these were used with the intention of misleading the public. It follows that they have stepped beyond the bounds of the law in thus adopting for their own purposes the trade-name of the plaintiff. Their action in so doing amounts to unfair competition with the plaintiff.

▨ I am not impressed with the defendant's argument that the letters "A & P" are used by many other concerns throughout the country. The evidence was that out of 2,244,175 company and firm names listed in Dun & Bradstreet's Credit Rating Book, there were twelve which used the letters "A & P" in their names. Only one of these concerns was known to the plaintiff and that one appears to have been the defendant in a suit in the Western District of Pennsylvania. Great Atlantic & Pacific Tea Co. v. A. & P. Cleaners & Dyers, Inc. [D.C.] 10 F.Supp. 450. There is no evidence as to how long any of the twelve concerns have been in business or as to the extent of their infringement upon the plaintiff's trade-name. But regardless of this it is obviously no excuse for the defendant's conduct to say that others have been guilty of the same wrong. Nor is the question here whether the plaintiff has an exclusive right, but rather whether to the public "A & P" means the plaintiff.

▨ Nor can I follow the defendant's final argument that it secured a right to

the use of its corporate name from the Commonwealth of Pennsylvania and that plaintiff was guilty of laches in failing to protest in response to the advertisements of its intention to secure a certificate of incorporation inserted in the newspapers as directed by the Pennsylvania Business Corporation Law (15 P.S.Pa. § 21). The issuance of its charter did not confer on the defendant any right wrongfully to use a name already used by another, nor was it an adjudication by the state of the legality of the name chosen. That is a matter for this court to determine. Hudson Tire Co. Inc. v. Hudson Tire & Rubber Corporation (D.C.) 276 F. 59.

### Conclusions of Law

Plaintiff is the owner of the trade-name or nickname and trade-mark "A & P."

Defendant's use of the letters "A & P" in its corporate name and otherwise in connection with its business constitutes unfair competition with the plaintiff in violation of the law.

Plaintiff is entitled to an injunction against defendant, its agents, servants, attorneys, and employees, restraining them from using the letters "A & P" in its corporate name and otherwise in connection with its business.

A decree may be entered accordingly.