**STORK RESTAURANT, Inc., v.
MARCUS et al.**

No. 728.

District Court, E. D. Pennsylvania.
Jan. 6, 1941.

Abraham L. Freedman, Fred Wolf, Jr., and Wolf, Block, Schorr & Solis-Cohen, all of Philadelphia, Pa., and Louis R. Coltman and Goldwater & Flynn, both of New York City, for plaintiff.

David Kanner, of Philadelphia, Pa., for defendant.

BARD, District Judge.

The complainant, owner and operator of a restaurant and cafe named "The Stork Club" in New York City, at which food, beverage, entertainment and dancing facilities are furnished the public, instituted this action against the defendants to enjoin and restrain them and each of them, individually and otherwise, from conducting a restaurant, cafe or night club in Philadelphia or elsewhere under the name of "The Stork Club" or any name similar thereto, with or without insignia indicating a stork. The complainant also seeks to have the defendants restrained from using such name or insignia as an appurtenance to a trade or business in any manner whatsoever, to have judgment entered against the defendants for $10,000 damages, to have the defendant Marcus enjoined to cancel his registration in Pennsylvania of the name "The Stork Club", to have enjoined the future registration of the same or similar name anywhere, and to have granted such further relief as the court may deem just and proper.

I make the following special findings of fact:

1. The plaintiff is a corporation incorporated under and existing by virtue of the laws of the State of New York, with its principal place of business at 3 East 53d Street, City and State of New York.

2. The defendants are all residents and citizens of the State of Pennsylvania.

3. The amount in controversy is in excess of $3,000 exclusive of interest and costs.

4. The plaintiff has, since on or about August 15, 1934, continuously used the name "The Stork Club" as the name under which it has conducted a restaurant and cafe, supplying food, beverage, music, and dancing facilities, at 3 East 53d Street, New York.

5. The Stork Restaurant Corporation, user of the name "The Stork Club" theretofore, had ceased to do business prior to August 15, 1934, on or about which date the plaintiff acquired the physical assets of the Stork Restaurant Corporation, through one of the plaintiff's stockholders.

6. Since on or about August 15, 1934, the plaintiff has used, in conjunction with its use of the name "The Stork Club" in its business, an insignia consisting of a stork, standing on one leg and wearing a high hat and monocle.

7. The plaintiff has expended considerable effort and large sums of money, approximately $200,000 in the last five years, advertising and otherwise promoting its business by various methods and through various media. Some of the advertising and promotion has been directed to Philadelphians, through the mail and by personal contact.

8. The plaintiff's "The Stork Club" has been referred to and written of in various periodicals and other printed matter of local and national circulation a large number of times.

9. The plaintiff employs approximately 140 people to provide several hundred customers each day between 11:30 A. M. and 4 A. M., with relatively high-priced and high-quality food, beverages and entertainment, which service yields an average gross income of over $500,000.

10. The plaintiff's restaurant has been and now is patronized by persons both from in and about the City of New York and from the United States at large, including the Philadelphia area.

11. The plaintiff's restaurant has been and now is patronized by persons of some prominence in social, literary, artistic, professional, commercial, official and cinematic circles.

12. The plaintiff's restaurant is known as "The Stork Club" to a large number of people in and about Philadelphia, the great majority having learned through the plaintiff's advertising rather than by visiting the plaintiff's restaurant.

13. The plaintiff has evidenced no intention to operate a restaurant in the Philadelphia area.

14. The defendant Albert Marcus registered with the proper Pennsylvania authorities, on or about November 16, 1939, as proprietor of a restaurant business under the fictitious name "The Stork Club" located at 5723–25 North Broad Street, Philadelphia, Pennsylvania.

15. Shortly prior thereto, on or about October 31, 1939, defendant Albert Marcus, under the name "The Stork Club", began the operation at the above address of a restaurant, cafe and night club, serving food and beverages, providing music and dancing facilities, and furnishing entertainment to an average of 1000 persons each week.

16. The defendant Albert Marcus widely advertised in the City of Philadelphia the operation of his business under the name "The Stork Club."

17. The defendants Joseph Toll and Harry Hahn were and are associated with the defendant Albert Marcus in the operation of the business, the former as general assistant to the owner and the latter as master of ceremonies.

18. The defendant uses insignia and decorations similar, though not identical in all cases, to those used by the plaintiff.

19. The defendant's use of the name "The Stork Club" and related insignia has resulted in some confusion in the minds of several members of the public, and is of such a nature likely to cause further confusion.

20. The defendant Marcus caters generally to the trade in the vicinity of his restaurant and in the City of Philadelphia rather than specially to persons of prominence.

21. The defendant Marcus has not deprived the plaintiff of any patrons.

22. The defendant Marcus is profiting from the fame and repute adjunctive to the name and insignia of the plaintiff's restaurant.

23. The defendant's business, although fundamentally similar, is of such type that the nature of the reputation likely to be accorded to his business will differ materially from the nature of the reputation of the plaintiff's restaurant.

24. The defendant has not given a satisfactory explanation of his choice of the name "The Stork Club" for his place of business.

25. The plaintiff has not given affirmative consent or authority to the defendants or any of them to operate a restaurant under the name "The Stork Club", or to use insignia indicating or relating to the name.

26. The plaintiff discovered the use of the name "The Stork Club" and related insignia during November, 1939, and promptly thereafter, on or about November 22, 1939 notified the defendants to cease such use, but the defendants have failed to do so.

### Discussion.

■ The purpose of a designation such as that used by the plaintiff is to identify the business in connection with which it is used. The accompanying insignia used by the plaintiff aids in establishing or impressing the identification in the public mind. Protection will be accorded such a device only when and in so far as used in connection with a business, for such an appurtenance to trade is a property right only in the sense that the right to one's trade free from unwarranted interference by others is a property right. General Baking Co. v. Goldblatt Bros., 7 Cir., 90 F.2d 241, certiorari denied 302 U.S. 732, 58 S.Ct. 56, 82 L. Ed. 566, petition for rehearing denied 302 U.S. 781, 58 S.Ct. 479, 82 L.Ed. 603.

■ It is generally recognized today that the emphasis in cases concerning trade-marks, trade-names, and "unfair competition" is no longer on competition, but rather on the injury suffered by the plaintiff and the public, it being enough if the defendant's acts result in confusion or deceit of the public. Nims, "Unfair Competition and Trade-marks", 1929, p. 954; American Clay Mfg. Co. v. American Clay Mfg. Co., 198 Pa. 189, 47 A. 936; Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, D.C., 20 F.Supp. 703. In the latter case it was declared that the owner of a nationally known and valuable trade-name could restrain another's use of the same in connection with a noncompeting business, even though custom and trade were not diverted by such use, since owner's reputation might be tarnished thereby. Thus it appears that the fact the defendant does not and probably will not deprive the plaintiff of trade is not a valid defense in this instance.

■ It might fairly be said that the courts, in adjudicating controversies such as the instant one, regard judicial sensibilities rather than strict legal principles. However, it is of course necessary that the plaintiff's designation be known in the area of the defendant's operation, and that the use thereof by the defendant promote confusion or deceit of the public or otherwise accomplished the tarnishment referred to, unless the defendants selected it with some design inimical to the plaintiff.

■ The defendants deny that they chose a name and insignia with any inimical design. With an infinity of names and insignia, real and fanciful, from which to choose, the defendants appropriated a designation practically identical to that of the plaintiff, explaining the choice as having been made "principally because the stork was relative to the color scheme of pink and blue being nursery or baby colors." This explanation is altogether implausible, and so lends no savor of truth. However, I will not decide that they had a design inimical to the plaintiff, though in cases of unfair competition, the fraudulent intent is often inferred from facts, sometimes against the defendant's sworn protestations. Wolf Bros. & Co. v. Hamilton-Brown Shoe Co., 8 Cir., 206 F. 611. I will believe that they intended to do no more than "borrow" the value of the name "The Stork Club".

The plaintiff, particularly and peculiarly in this instance, has an interest in the general reputation attendant to its operating name and insignia. By them its restaurant has a novel if not unique identification in the minds of a very large number of people, among whom must be counted hundreds, perhaps thousands, of Philadelphians who have either received advertising matter through the mails, been contacted personally, or patronized the plaintiff's place of business situate 90 miles distant from the City of Philadelphia. Restricted though such a reputation is or may be, if it is a business asset, and it appears it is, it warrants protection.

■ Because an attractive, reputable trade-name can be imitated not for the purpose of diverting trade from its owner, but rather for the purpose of securing some of the good will, advertising, and sales stimulation appurtenant to it, the interest in a trade-name came to be protected against being subjected to the hazards of another's business not in actual competition. Restatement of the Law of Torts, § 730, comment (a). That is, one's interest in a trade-name came to be protected against simulation not only in a competing business, but in a business so related to that of the owner of the trade-name that the possible ill repute of the other would be visited upon him.

This protection is accorded, however, only within the limits fixed by the likelihood of confusion of prospective purchasers. The issue in each case is whether the objected-to use subjects the complainant's good will to the hazards of the actor's

business. It has been said that "unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful", Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 974. I cannot rely too much upon this statement, as it relates to tangible goods rather than restaurants or cafes, but it does persuade me that probability of identification is alone sufficient when actual identification would work to the plaintiff's ultimate disadvantage.

Upon reviewing the cases cited by the defendants, I conclude that they are inapplicable here due either to material factual divergence or noncontrolling legal bases.

██ Recurring now to the facts of the present case, it is objected that the plaintiff has not satisfactorily established its right to use the name "The Stork Club". Without considering the legal efficacy of the purchase or assignment, I am convinced there is no force to this objection. The prior user, the Stork Restaurant Corporation, went out of business. Since the name was its property only as an appurtenance to its business, dissolution of the business freed the name for appropriation by another business. Restatement of the Law of Torts, § 752. Furthermore, I am in sympathy with the thought that "It seems to violate common sense to hold that, because a plaintiff asserts a trade-mark title to which is not perfect, the court must stand by and allow the defendant to continue to deceive the public. It does not seem to accord with public policy for an equity court to permit deceit of the purchasing public, once the existence of such deceit or confusion is called formally to its attention, for any reason." Nims "Unfair Competition and Trade-marks", 1929, p. 975. The deceit in this instance is, of course, indirect if not trivial, because there is not yet evidenced any damaging confusion, but the principle is appropriate.

█ The defendants raise a correlative objection to the effect that the plaintiff cannot recover in a court of equity because it is doing business under a name other than its proper corporate name. It is claimed that such cannot be done in New York, and the cases of In re United States Mortgage Co., 83 Hun 572, 32 N.Y.S. 11, and Scarsdale Pub. Co.-The Colonial Press v. Carter, 63 Misc. 271, 116 N.Y.S. 731, are cited. These cases are concerned with circumstances not here pertinent. There is, for example, quite a difference between endeavoring to make binding contracts under a name other than the granted name and marketing goods or services under a "label" designed to facilitate and insure their identification. Therefore, I do not deem the cited dicta pertinent.

█ Manifestly the defendant is profiting, if to an indeterminate extent, from the reputation and significance which are adjuncts of the plaintiff's name "The Stork Club". As noted, however, this alone is not sufficient to establish the plaintiff's right to the relief sought. It must appear that the public is being deceived, in some manner, likely to prove detrimental to the plaintiff—not necessarily that the defendant is getting some business which would otherwise be going to the plaintiff, but that the defendant's use is deceiving the public to the plaintiff's probable ultimate injury.

Though there has been shown but slight confusion, it requires nothing but comparison of the names, insignia and fundamental character of business done to demonstrate that there is a likelihood of future confusion. Whether the defendant's business will continue to differ as it now does from that of the plaintiff can only be conjectured. Whether the now patent difference will effect a depreciation of the value of the plaintiff's name and insignia is even more conjectural. But, I am decided that there exists a threat, if not a promise, of growing confusion to the detriment of the plaintiff's reputation in an area from which its patrons are in part drawn.

█ This latter conclusion must, of course, be tempered by an admission that the foreseen confusion, if it occurs, will not damage the reputation "at large" of the plaintiff. That is, any injury done to the plaintiff's reputation will be confined to a geographically and numerically small proportion of the plaintiff's public. However, this admission does not constrain me to view the defendant's transgressions as within the rule of de minimis non curat lex. In fact, reflection clarifies the possible, perhaps probable effects of licensing such an usurpation of reputation as here confronts me. Upon the strength of a single, if sustained, precedent the plaintiff could be literally "hemmed in" by "Stork Clubs", until the public was so surfeited with the same that the mere mention of the name would provoke contrary reactions.

█ An unfair competitor may, under proper conditions, be held to an accounting for profits, Wolf Bros. & Co. v. Hamilton-

Brown Shoe Co., 8 Cir., 206 F. 611, but I do not deem the instant circumstances sufficient to satisfy reasonable prerequisites to the same.

Conclusions of Law.

1. The Court has jurisdiction over the matter involved in this proceeding.

2. The plaintiff corporation is entitled to use the name "The Stork Club" and the insignia adopted relative thereto in its New York business.

3. The plaintiff is entitled to protection against trade practices which do or are likely to infringe unfairly upon the plaintiff's use of the name and insignia.

4. The defendant Marcus, in using the name "The Stork Club" and insignia similar to that adopted by the plaintiff, is guilty of an unfair trade practice.

5. The defendants Toll and Hahn are not parties to the practice.

6. The plaintiff is entitled to an injunction restraining the defendant Marcus from conducting his restaurant-cafe-night club under the name "The Stork Club" or any name similar thereto, and from using in conjunction therewith or independently any insignia similar to or suggestive of that of the plaintiff.

7. In light of the circumstances herein noted and others made apparent in the course of the trial, it is deemed proper that the defendants Toll and Hahn should be relieved of the payment of any costs and that the plaintiff and the defendant Marcus each should bear their own costs.

8. A decree in accordance with the findings and conclusions herein may be submitted for entry as the order of this court.

The requests for findings of fact and conclusions of law are affirmed to the extent consistent herewith, and denied in so far as inconsistent herewith.