548 A.2d 1259

**Sadye RESS and Sanford Ress, Appellants,**

v.

**Esther BARENT, Bernard Zvirman, Edward Threlfall, Jr., Bernard Ress Company, Inc., and B.J. Ress Company, Inc.**

Superior Court of Pennsylvania.

Argued June 29, 1988.

Filed Oct. 4, 1988.

Meghan F. Wise, Pittsburgh, for appellants.

Bernard J. Sweer, Pittsburgh, for Barent, appellee.

Harvey A. Miller, Jr., Pittsburgh, for Threlfall, appellee.

Before BROSKY, JOHNSON * and MELINSON, JJ.

BROSKY, Judge:

This is an appeal from the order of December 2, 1987, which granted appellees' preliminary objections, and dismissed appellants' complaint without leave to amend.

Appellants are Sadye Ress and Sanford Ress, the widow and son, respectively, of the late Bernard Ress. For forty years, Bernard Ress owned and operated a restaurant supply and equipment business in the Pittsburgh area, known as the Bernard Ress Company. On December 31, 1971, Ress made an agreement with three long-time employees, Esther Barent, Bernard Zvirman, and Edward Threlfall, three of four appellees herein. The agreement transferred to these appellees all of the inventory and stock in trade of Ress's business, as well as all obligations and liabilities associated with it, for the continuation of the business by appellees' new corporation, the Bernard Ress Company, Inc.

* Johnson, J. did not participate in the disposition of this case.

With respect to the trade name "Bernard Ress Company", however, the agreement of sale contained the following restrictive covenant upon its use:

6. Buyer may use the name "Bernard Ress Company" as the name of any restaurant, bar supply and kitchen equipment business that it may hereafter conduct; provided, however, that Buyer *may not transfer or assign this right to any other party and that in the event that at any time after the date of this Agreement* ESTHER BARENT, BERNARD ZVIRMAN, or EDWARD THREL-FALL, JR., either individually or collectively, do not own at least 51% of the then issued and outstanding capital stock of Buyer, Buyer shall immediately cease using the name Bernard Ress Company or any similar name unless Buyer shall have secured Seller's permission for such continued use. (Emphasis supplied.)

Ress died in 1983, and named his widow, Sadye, as his personal representative. Shortly after Ress's death, appellants Sadye and Sanford Ress learned that appellees Barent, Zvirman, and Threlfall had transferred the assets of their corporation, the Bernard Ress Company, Inc., to a new corporation, the B.J. Ress Company, Inc., in which they no longer owned 51% of the outstanding stock. Appellants also learned that the new corporation was continuing to use the trade name "Bernard Ress Company".

On May 8, 1987, counsel for appellants wrote to the B.J. Ress Company, Inc., demanding that it immediately cease the use of the "Bernard Ress Company" trade name. That demand was ignored, and, on June 26, 1987, appellants filed a complaint against Barent, Zvirman, Threlfall, and the B.J. Ress Company, Inc. (the fourth appellee herein), requesting declaratory and injunctive relief based on the use of the trade name "Bernard Ress Company" in alleged violation of the restrictive covenant contained within the original agreement of sale. All four appellees filed preliminary objections, in the nature of a demurrer, arguing: (1) that the restrictive covenant was not intended to survive the death of Bernard Ress, and that any cause of action pursuant to

the covenant was thereby precluded;  and (2) that appellants had no capacity to sue under the facts alleged.  By order of December 2, 1987, the trial court sustained the preliminary objections of all appellees, without opinion, and dismissed appellants' complaint without leave to amend.  This timely appeal followed.

Appellants now contend that the trial court erred in dismissing their complaint, and raise the following four questions:  (1) whether a contract provision restricting the use of a trade name is enforceable after the death of one of the parties to the contract;  (2) whether the personal representative of the deceased owner of a trade name has standing to sue to enjoin the unlawful use of the trade name;  (3) whether the heirs of the owner of a trade name have standing to sue to enjoin the unlawful use of the trade name;  and (4) whether use of a trade name by a third party transferee of the right thereto may be enjoined where such use is unauthorized.

Upon consideration of the arguments raised by the briefs of counsel, we now vacate the trial court's order dismissing the complaint, and grant appellants leave to amend in accordance with this opinion.

In ruling upon preliminary objections in the nature of a demurrer, the court must accept as true all well-pleaded, material, relevant facts, and all inferences fairly deducible from those facts, but not the pleader's conclusions or averments of law. *County of Allegheny v. Comm. of Pa.,* 507 Pa. 360, 490 A.2d 402, 408 (1985).  The demurrer should not be sustained unless it is clear from the face of the complaint that no theory of law will permit a recovery. *Id.; Chartiers Valley School District v. Virginia Mansions Apartments, Inc.,* 340 Pa.Super. 285, 489 A.2d 1381, 1386 (1985). Rather, where the law will permit a recovery, leave to amend should be liberally granted. *Connor v. Allegheny General Hospital,* 501 Pa. 306, 461 A.2d 600, 602 (1983); Pa.R.C.P. 1033.

Appellants' first contention is that the restrictive covenant contained within the contract is enforceable after the

death of Bernard Ress, and that the complaint requesting declaratory and injunctive relief[1] pursuant to that covenant should not have been dismissed out of hand.

■ To be enforceable, a restrictive covenant must satisfy three requirements: (1) it must relate to either a contract for the sale of goodwill or other subject property, or to a contract for employment; (2) it must be supported by adequate consideration; and (3) it must be reasonably limited in both time and territory. *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207, 210 (1976). Clearly, the dispute *sub judice* arises from the third requirement. While appellees do not dispute that a restrictive covenant may extend in its duration to one of the parties' heirs and assigns and be reasonable in duration, they are maintaining that to interpret the restrictive covenant herein as extending beyond Bernard Ress's death, in the absence of any express language extending the right to enforce the covenant to his heirs and assigns, would extend what was intended to be a privilege purely personal to Bernard Ress, for an unreasonable length of time. Hence, we are called upon to determine whether a restrictive covenant pertaining to the use of a trade name, in the absence of express language concerning heirs and assigns, may be interpreted as intended to be enforceable beyond the death of the owner of the trade name.

■ It is a cardinal rule of contract interpretation that the intention of the parties at the time the contract is entered into governs; this rule also holds true in the interpretation of restrictive covenants. *Great Atlantic and Pacific Tea Co. v. Bailey*, 421 Pa. 540, 220 A.2d 1, 2 (1966). It is also a general rule of contract law, however, that contracts made during a decedent's lifetime are not dissolved by death unless they involve peculiar skills or are

---

**1.** The construction of documents such as written contracts is a proper subject for declaratory and injunctive relief. See *Madden v. National Association of Basketball Referees*, 359 Pa.Super. 206, 518 A.2d 853, 854 (1986); *New London Oil Co., Inc. v. Ziegler*, 336 Pa.Super. 380, 485 A.2d 1131, 1133 (1984). Hence, the interpretation of the contract, and specifically of the restrictive covenant, was properly before the court.

based on distinctly personal considerations. *Unit Vending Corp. v. Lacas*, 410 Pa. 614, 190 A.2d 298, 300 (1963); *In re Stormer's Estate*, 385 Pa. 382, 123 A.2d 627, 629 (1956). Hence, while appellees would have us apply the ancient maxim "expressio unius est exclusio alterius", or "that which is not included is excluded" to automatically infer, from the absence of express language pertaining to heirs and assigns, that the restrictive covenant was intended to die with Bernard Ress, we cannot so infer. This maxim merely expresses a rule of construction, and not a rule of substantive law; it is not to be invoked arbitrarily to bar reasonable inferences to the contrary, or when an examination of the entire transaction reveals a different or more inclusive intent. *Checker Oil Co. of Delaware, Inc. v. Harold H. Hogg, Inc.*, 251 Pa.Super. 351, 380 A.2d 815, 817 (1977).

In point of fact, it has previously been held that, where a contract fails to provide for the contingency of the death of a party, it is not to be presumed that the contract was intended to "die" with the decedent, but, rather, the contract is ambiguous and doubtful as to this contingency, and resort must be had to other rules of contract interpretation. See *Unit Vending, supra*. One of these rules is that the court will adopt the interpretation, which under all the circumstances of the case, ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects to be accomplished. *Id.*, citing *Weigand v. Weigand*, 349 Pa. 517, 37 A.2d 492 (1944), and *Brookbank v. Benedum–Trees Oil Co.*, 389 Pa. 151, 152, 131 A.2d 103 (1957).

Appellees maintain that, even setting aside the absence of express language concerning heirs and assigns, the restriction involved was intended for the distinct personal consideration of protecting Ress's name while he lived, and hence was not "reasonably, probably, or naturally" intended to survive him. Appellants, on the other hand, argue that Ress intended by the restriction to protect the family trade name in perpetuity, thus making the restriction capable of

being enforced by Ress's heirs and personal representative. To resolve this conflict, it may prove beneficial to consult that law which is applicable to trade names, and determine the following: is a trade name so personal and peculiar to the owner that it may be discerned from the present covenant, as a matter of law, that the restriction upon the usage of "Bernard Ress Company" was not intended to survive the owner, Bernard Ress?

A trade name, like a trademark, identifies the business in connection with which it is used. *Stork Restaurant, Inc. v. Marcus,* 36 F.Supp. 90 (E.D.Pa.1941). While a trademark is applicable to the vendable commodity to which it is affixed, a trade name applies to the business concern itself, and its goodwill. *Gamlen Chemical Co. v. Gamlen,* 79 F.Supp. 622 (W.D.Pa.1948). Hence, while a trade name may not be registered, or may be incapable of being registered, as a trademark, it is nonetheless entitled to protection against infringement under the law of unfair competition, where it has become recognized by the general public as identifying certain products, groups, services, or goodwill of a particular business concern. *U.S. Jaycees and Pa. Junior Chamber of Commerce v. Philadelphia Jaycees,* 490 F.Supp. 688 (E.D.Pa.1979); *Gamlen, supra.; Thompson–Porcelite Co. v. Harad,* 356 Pa. 121, 51 A.2d 605, 606 (1947). Such an appurtenance to trade is a property right in the sense that the right to one's trade free from interference by others is a property right. *Stork, supra.*

Moreover, it is generally recognized today that the emphasis in cases concerning trademarks, trade names, and unfair competition is no longer on competition itself, but rather on the injury suffered by the plaintiff and the public. Use of trademarks and trade names by third parties has been restrained in connection with *non*-competing businesses, where it is clear that the third party defendant is not diverting away custom and trade. *Thomson–Porcelite, supra,* 356 Pa. at 123, 51 A.2d at p. 607; *Stork, supra; Great Atlantic and Pacific Tea Co. v. A & P Radio Stores,* 20 F.Supp. 703 (E.D.Pa.1937). If the defendant's acts have a

tendency to confuse and deceive the public, he may be restrained. *Thomson–Porcelite, supra.* This is because the plaintiff, by such deception, may be damaged in ways other than the diversion of business. His business expansion may be forestalled; a false impression of a trade connection between the plaintiff and the defendant may be created which will later subject the plaintiff to liability or the embarrassment of litigation, or the loss of credit standing; or, purely and simply, his reputation may be tarnished by the use of his mark or name in connection with inferior goods or services over which he has no quality control. *A & P Radio Stores, supra.* The defendant, if not restrained, will have secured the goodwill attached to the plaintiff's business, while potentially visiting ill repute upon the plaintiff's name. *Stork, supra.*

■ Returning, then, to the instant trade name restriction, we cannot find as a matter of law that it is inherently unreasonable, unnatural, or improbable that Bernard Ress intended the covenant to survive his death.

Clearly, as may be discerned from the contract itself, a fear of competition was not the motivation for the covenant. Indeed, in the paragraph following the restrictive covenant, Ress promised not to compete in any way "directly or indirectly" with the new business bearing his trade name for a period of two years; moreover, he did not reserve to himself a right to revoke appellees' right to the trade name in the event he chose to re-enter the restaurant supply and equipment business, but, rather, reserved only a right of revocation in the event appellees conveyed to "any other party" the controlling interest in the new company bearing his trade name. These factors, when viewed against the background of trade name law, as discussed above, tend toward one conclusion: the purpose of the restriction was the protection of the trade name from any tarnish, embarrassment, or ill repute that might befall it should a business bearing that name ever fall into the hands of someone other than his trusted former employees, the named appellees. Furthermore, the use of such phrases in the subject clause

as "may not transfer or assign this right to any party" and "at any time after the date of this agreement" could be said to suggest that Ress was not only concerned with his reputation for his lifetime, but in perpetuity as well.

Additionally, we do not believe it reasonable to assume outright that this concern with reputation would be personal or peculiar to the decedent alone. It would also be reasonable, natural, and probable to assume that one's family has an interest in ensuring that a family trade name does not become connected with embarrassing litigation, a loss of credit, or the ridicule and scorn that accompanies the association by the public of a name with inferior goods or services.

As such, we now hold that the trial court acted prematurely in determining the instant covenant to be unenforceable as a matter of law, and in dismissing appellants' complaint. While it may be *factually* determined at a later stage in the proceedings that Bernard Ress did not intend the restriction on his trade name to survive him, the subject clause is sufficiently ambiguous on this point, and we do not believe the interpretation suggested by appellants to be precluded as a matter of law. Rather, we believe appellants are entitled to produce evidence in support of the requested construction.

■ This, however, brings us to the next two contentions raised on appeal, which invoke the following question: who has the capacity to sue in order to attempt enforcement of the covenant? Appellees maintain that, in the event the restriction survives Bernard Ress, the only party with standing to sue is Bernard Ress's personal representative, and, as Sadye Ress is not pled in the complaint in that capacity, the trial court was correct in dismissing the action. Appellants counter that: (1) Sadye and Sanford Ress have standing to sue as heirs of the estate, both pursuant to the contract and under common law; and (2) even assuming that only Sadye Ress, as the representative, would have standing, the trial court should have permitted amendment

of the complaint to plead Sadye Ress's capacity as representative.

As the parties do not dispute, and the law confirms, that the restrictive covenant may be enforced by the personal representative of Bernard Ress, see *Unit Vending, supra* and *Stormer, supra,* we reserve discussion of the failure to plead Sadye's capacity as the personal representative pending resolution of the more complicated question: do the heirs of Bernard Ress have standing to sue?

■ The general rule is that a party in an equity action has standing, and is indispensable, when he has such an interest that a decree cannot be entered without affecting, and potentially impairing his rights. *Mechanicsburg Area S.D. v. Kline,* 494 Pa. 476, 481, 431 A.2d 953, 956 (1981).

As noted in the discussion of Issue 1, the enforceability of the covenant following Ress's death, it cannot be presumed, at this early stage of the litigation, that the only concern on the part of Ress was the protection of his reputation during his lifetime; rather, due to the ambiguity of the subject restriction, it is equally possible that Ress intended that the name be protected in perpetuity for the benefit of his memory, as well as to protect his heirs from the embarrassing litigation, a loss of credit, and any ridicule or scorn that could arise from the usurpation of the family name by an inferior business concern. Hence, it cannot be said that the heirs of Bernard Ress do not have an interest, pursuant to the contractual restriction,[2] that will not be impaired if they are denied their day in court. We are thus loathe to deny them standing to sue sheerly on the basis of their lack of privity to the contract.

However, with respect to the standing question, appellees have made several arguments pertaining to deficiencies in the complaint, which are well taken by this Court. As noted previously, appellants' complaint fails to plead Sadye Ress's capacity as the personal representative of the estate

---

**2.** For reasons we shall discuss *infra* pertaining to Issue 4, we decline to decide whether the heirs would have standing to sue wholly apart from the instant contract.

of her late husband. Additionally, the complaint fails to state whether Sadye and Sanford Ress are the only heirs of Bernard Ress; if, indeed, the heirs have a justiciable claim pursuant to the covenant, all heirs are indispensable parties, and, under Pa.R.C.P. 1032(2), must be joined to prevent dismissal of the action. Finally, at no point does the complaint allege with specificity that the harm in which the heirs and representative have a material interest in preventing, has occurred: that is, the complaint does not allege that the appellee-employees no longer own 51% of the outstanding stock in the new B.J. Ress Co., Inc.

■ However, as noted above, where the law may permit a recovery under some theory, leave to amend should be liberally granted. Clearly, the subject complaint, upon remand, should be amended to address appellees well-taken objections.

As such, we conclude that, pursuant to the contract, Sadye and Sanford Ress have standing to sue, as heirs of the estate, and pursuant to Sadye's capacity as the personal representative of the estate. As such, appellants should be permitted to amend the complaint to establish: (1) Sadye's capacity as the personal representative; (2) that Sadye and Sanford are the sole heirs of Bernard Ress; and (3) the nature of the material interest which has been harmed, and thereby conveys standing to sue.

■ Appellants' fourth and final contention is that, even in the absence of a right to enforce the restrictive covenant in the contract, appellants have a common law cause of action permitting them to enjoin the use of the family trade name. We do not resolve whether such a common law right exists, but hold only that the existence of the restrictive covenant limits appellants to a cause of action on the contract itself.

■ It is old, settled law that persons may alter by express agreement the legal relationship they would normally have had by operation of law. See *Germantown Trust Co. v. Stanley Co. of America*, 338 Pa. 533, 13 A.2d

406, 408 (1940). That is not to say that a contract phrase, if susceptible of two interpretations, is not to be construed in accordance with the common law, where consistent with the apparent intention of the parties, for it is assumed that parties contract with knowledge of the existing law. *Harding v. Pa. Mut. Life Ins. Co.*, 171 Pa.Super. 236, 90 A.2d 589, 597 (1952), aff'd, 373 Pa. 270, 95 A.2d 221, cert. denied, 346 U.S. 812, 74 S.Ct. 21, 98 L.Ed. 340 (1953). However, where the parties have chosen to address a particular aspect of their legal relationship by contract, it is the writing itself that is to determine the rights and liabilities of the parties. *Giant Markets v. Sigma Marketing Systems*, 313 Pa.Super. 115, 459 A.2d 765, 769 (1983).

In the matter *sub judice*, the parties to the contract chose to address, in writing, the nature of their legal relations pertaining to the usage of the trade name "Bernard Ress Company". We must assume, therefore, that the parties intended the restrictive covenant to embody their agreement as to its usage, and this Court would deem it inappropriate to find a common law cause of action in appellants where the original parties intended their relations to be governed on this point by a written contract.

In light of the foregoing, we now enter the following order. We vacate the order of December 2, 1987, which dismissed appellants' complaint, and enter an order granting appellants leave to amend their complaint within thirty (30) days from the date of the order to plead: (1) the capacity of Sadye Ress as the personal representative of the estate of Bernard Ress; (2) that Sadye and Sanford Ress are the sole heirs and assigns of Bernard Ress, or, in the alternative, the names of all heirs and assigns to Bernard Ress; and (3) the nature of the material interest of the plaintiffs which has been harmed by the named defendants.

Order vacated and case remanded. Jurisdiction relinquished.

JOHNSON, J., did not participate in the disposition of this case.