## Marr Estate v. Marr

*Catherine Lecky,* for plaintiff.
*Richard Malmed,* for defendant.

LAWRENCE, *J.,* April 11, 1990 — This is an appeal from this court's order granting in part defendant's motion for summary judgment. The background facts are as follow.

After approximately 15 years of marriage, Antoinette and Richard Marr became intent on dissolving

their union. To this end, a divorce action was commenced and, on November 24, 1987, they entered into a property-settlement agreement to dispose of marital property and assets. Under the terms of the agreement, Mr. Marr conveyed all of his right, title and interest in the residence both he and his wife had acquired as tenants by the entireties at 55 Glen Farms Drive, Collegeville, Pennsylvania to Mrs. Marr, as well as certain personal property. Paragraph 5 of the agreement states that both husband and wife were represented by counsel and that "the provisions of this agreement and their legal effect have been fully explained to the parties by their respective counsel. . ."

Two paragraphs of the agreement assume critical significance in this case: paragraphs 17 and 24. Paragraph 17 of the agreement states:

"This agreement shall remain in full force and effect unless and until it is terminated either by mutual written consent of both parties or to the extent it is appropriately terminated by the death of either party or under the terms hereof."

Paragraph 24 of the agreement states:

"Notwithstanding any of the provisions of this agreement, *if a final decree in divorce shall not have been entered with respect of the parties within three months from the date of execution of this agreement, this agreement shall automatically become null and void and the covenants and undertakings contained herein shall not be binding upon the parties. In such event, any property, funds and/or documents shall be returned to the parties themselves or any escrowees named herein to their original sources, the intent of the parties being to*

*restore themselves to their respective positions im-
mediately prior to the date of execution of this
agreement."*

Mrs. Marr died on December 26, 1987 without a divorce decree ever having been issued dissolving her marriage to Mr. Marr. She was survived by her husband, her parents and her two children.

On February 12, 1988, Mrs. Marr's parents and the executor of her estate filed a complaint in equity for specific performance of the property-settlement agreement, the return of the parents' personal property and an accounting of assets to the estate. Mr. Marr filed an answer and counterclaim. He subsequently filed the instant motion for summary judgment, seeking a dismissal of the complaint on the basis that the agreement was contingent on the entry of a final decree which was never in fact entered prior to Mrs. Marr's death and that, therefore the agreement was null and void.

The court agreed as to the agreement's voidness and granted summary judgment on February 7, 1990.[1] Plaintiffs now appeal.

## DISCUSSION

Pennsylvania Rule of Civil Procedure 1035(b) provides that summary judgment:

"[S]hall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

1. The court denied summary judgment as to the issues of the return of personal property allegedly belonging to Mrs. Marr's parents and the accounting to the estate.

Summary judgment may be entered only in cases that are clear and free of doubt. *Dunn v. Teti,* 280 Pa. Super. 399, 421 A.2d 782 (1980). In addition, the court must view the evidence in the light most favorable to the non-moving party and accept as true all well-pleaded facts in the non-moving party's pleadings, and give the non-movant the benefit of all reasonable inferences to be drawn therefrom. *Ferguson v. King,* 362 Pa. Super. 543, 524 A.2d 1372 (1987).

In accordance with this standard and in the absence of any evidence suggesting the existence of a genuine issue of material fact, the court concluded that the agreement was null and void.

Plaintiffs' main argument is that this case should have been decided in accord with *Ress v. Barent,* 378 Pa. Super. 397, 548 A.2d 1259 (1988), in which the court allowed extrinsic evidence to be presented so as to determine whether a restrictive covenant contained in an agreement executed by Bernard Ress in 1971, transferring his business to his long-time employees, was enforceable after his death.[2] This is without merit.

---

2. The covenant provided that the employees were allowed to continue using the trade name of "Bernard Ress Company" provided they did not transfer or assign the right to any other party. It additionally provided that they cease using the name in the event they no longer owned 51 percent of the outstanding capital stock any time after the date of the agreement.

Bernard Ress died in 1983. Shortly thereafter, his widow and son learned that the employees had transferred the assets of the Bernard Ress Company to a new corporation in which they no longer owned 51 percent of the outstanding stock and that the new corporation had continued using the trade name "Bernard Ress Company." Bernard Ress' widow and son sought to enjoin the use of the trade name.

As a preliminary matter, *Ress* is distinguishable from the instant case on the facts. One of the factors the *Ress* court found dispositive in allowing extrinsic evidence was that the restrictive covenant contained no express language concerning its applicability to Mr. Ress' heirs and assigns.

The court further reasoned that because restrictions on the use of trade names were often imposed to protect the trade name from tarnish, embarrassment or ill repute not only during the founder's lifetime but in perpetuity as well, it could not conclude as a matter of law that it was inherently unreasonable or improbable that Bernard Ress intended the covenant to survive his death. Thus, the holding in *Ress* turned on the absence of language reflecting Ress' intent regarding the survivability of the restrictive covenant and the inherent probability that Ress intended the covenant to survive well beyond his lifetime.

In the case at bar, plaintiffs seek to persuade us that extrinsic evidence is necessary to show that Mrs. Marr intended the agreement to survive her, even in the event no decree were issued prior to her death.[3] Plaintiffs misconstrue the issue. The issue was not whether the property-settlement agreement survived Mrs. Marr's death or, conversely, termi-

---

3. Plaintiffs claim that because, like *Ress,* the agreement in this case fails to provide for the contingency of the death of a party, the contract is ambiguous, necessitating extrinsic clarification as to who drafted the property-settlement agreement, the parties' intent regarding paragraphs 17 and 24, the extent to which there was substantial performance of the agreement prior to Mrs. Marr's death and the circumstances surrounding her death.

Plaintiffs ignore paragraph 17, which explicitly provides for the termination of the contract in case of either party's death.

nated upon it. The sole determination this court was called upon to make was whether paragraph 24 of the agreement contained a contingency clause that, under the facts of this case, operated to void the contract. We think it does.

It is well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words of the contract are clear and unambiguous the intent is to be discovered only from the express language of the agreement. *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982).

The language of the instant agreement is express and clear and is, therefore, not in need of interpretation by reference to extrinsic evidence. The plain meaning of the paragraph 24 is that if a divorce decree is not obtained within three months of the signing, for whatever reason, the agreement is to become null and void. It was clearly a condition upon which the entire agreement was founded and not being capable of fulfillment within the stipulated time, the agreement is canceled. See *Village Beer & Beverage v. Cox & Co.,* 327 Pa. Super. 99, 475 A.2d 117 (1984); 5 Williston on Contracts §666 (3d ed. 1961).

That Mrs. Marr died before a divorce decree was entered is most unfortunate for her and her relatives. It is, however, irrelevant given that the agreement contains no provision that the agreement shall remain in full force and effect regardless of a change in the marital status of the parties. While not a matter of record, defendant averred in his new matter to plaintiff's complaint that Mrs. Marr had cancer. If it were true, it would have been prudent of her to insist on such a provision in the agreement.

That the contract does not include such a provision does not make the contract ambiguous.

Moreover, paragraph 24 contains language, consistent with the other terms of the agreement, as to the parties' intent if no decree was entered within the time provided. Paragraph 24 unequivocally declares that the parties' intent in the event no divorce decree was issued within the stipulated time was that they be restored to their respective positions immediately prior to the date an the execution of this agreement. Nothing could be clearer.

For all of the foregoing reasons, this court's order granting summary judgment was correct, and plaintiffs' appeal should be dismissed.