## J. Elliott Shaw, trading as J. Elliott Shaw & Co., *v.* George P. Pilling and Chas. J. Pilling, trading as George P. Pilling & Son, Appellants.

*Trade-mark—Falling off of business—Evidence—Question for jury.*

In an action to recover damages for an alleged wrongful use of a trademark, the plaintiff may give evidence of the falling off of his custom concurrently with defendants' beginning to use the trade-mark; the inference that the falling off of custom was due to the defendants' use of the trademark is for the jury.

*Trade-mark—Label—Custom.*

No custom of other people even in the same trade can excuse one man for taking another's property without his consent.

In an action to recover damages for the infringement of an alleged trademark, "Burgess," as applied to an atomizer, it appeared that defendants not only used the name "Burgess," but also the exact pictorial representation of the article. Defendants claimed that they supposed the name was a merely descriptive one. which any one might use, and that there was a custom of the trade for dealers to "borrow" each other's cuts for advertising purposes. *Held*, (1) that though the defendants may have acted ignorantly and innocently, their acts were susceptible of a different interpretation, and it was for the jury to say what was their true intention; (2) that the trial judge could not have. instructed the jury that such a custom, if proved, would be a defense.

*Trade-mark—Name—Invention.*

When an inventor and manufacturer of a new instrument puts his own or a partner's name to it, the presumption is that he does so to indicate its origin and maker, and intends the name as a trade-mark.

In an action to recover damages for the infringement of an alleged trade-mark, it appeared that the plaintiff with the aid of a physician invented an atomizer. He did not patent it, but he adopted and attached the name of his partner, Burgess, to distinguish his make of atomizer, and also invented and used a certain pictorial representation of it for the same purpose. Defendants used the same name and the same pictorial representation for their atomizer. It appeared that other parties also used the name, Burgess, and the same picture for their atomizers. The evidence showed that it was a rule of professional ethics among surgeons and physicians not to take a patent or adopt a trade-mark for an invention or improvement in a surgical instrument. *Held*, (1) that as plaintiff was not a physician, but an inventor and instrument maker, there was no ground for defendants to assume that the name, Burgess, was merely descriptive of the article, and free for all to use; (2) that the fact that other parties used the name and the picture as public property did not justify the defendants in so using them.

In an action to recover damages for the alleged wrongful use of a name adopted by the plaintiff as a trade-mark, it is proper for the court to refuse to charge that if defendants did not so use the names as to deceive the public, the plaintiff could not recover.   In such a case it is not necessary that the public should be actually deceived in order to afford a right of action.   All that is required is that the infringement should have a tendency to deceive.   The gist of the action is the intent to get an unfair benefit from another's trade; actual deception of the public is only material to the question of damages.

Argued Jan. 20, 1896.   Appeal, No. 29, July T., 1895, by defendants, from judgment of C. P. No. 2, Philadelphia Co., June T., 1892, No. 777, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN, and FELL, JJ.   Affirmed.

Trespass for the infringement of an alleged trade-mark.   Before PENNYPACKER, J.

At the trial it appeared that plaintiff claimed a trade-mark in the name of " Burgess " as applied to an atomizer.   The atomizer was inclosed in a dark red paper box having printed on the lid the following words and picture:

## BURGESS' ATOMIZERS.

MANUFACTURED BY

### J. ELLIOTT SHAW & CO.,

632 ARCH STREET, PHILADELPHIA.

In October, 1891, the defendants began to make an atomizer which was exactly like that made by plaintiff.   They called it

the Burgess atomizer, and inclosed it in a dark red paper box with a picture on the box like the one which plaintiff used on their box. Defendants continued to manufacture the atomizer under this name and label until notified by plaintiff's counsel to discontinue it, which was in February, 1892. The evidence showed that plaintiff with the aid of a physician had invented the atomizer, and had applied to it the name of his partner, Burgess. He did not patent the invention.

One of the defendants testified that there were between two and three thousand surgical instruments called by the names of individuals, solely as descriptive of certain patterns or styles of instruments, and among them at least five other surgical appliances called by the name, Burgess; and further, that in an experience of over fifteen years, he had never known any right of property or trade-mark to be claimed in the name of an individual as applied to a surgical instrument or appliance.

This testimony was corroborated by a number of experts in the surgical instrument business, who testified that the name, Burgess, as applied to the atomizers, was understood in the trade simply as a descriptive name; that by a Burgess atomizer the trade understood an atomizer of a certain pattern which might be made by any manufacturer; and did not understand by it an atomizer made only by the plaintiff.

When plaintiff was on the stand, he was asked this question:

Q. Did the orders from your former customers fall off immediately about that time; viz, about the time of the alleged infringement? A. It fell off about that time—yes, sir; there was quite a falling off.

Objected to unless the reason is shown why orders fell off.

Mr. Schick: I propose to show these particular parties which have been buying in large quantities ceased to buy. Objected to.

The Court: I think that you may show that the plaintiff's business fell off. Exception noted for defendants.

Q. State whether or not if any customers who had been using your atomizers prior to November, 1891, whether there was immediately a falling off of orders from those customers, and name any customer. A. Hayes & Co. used to order a great many atomizers indirectly; whether they bought them from the wholesale houses, I could not say. Q. Their orders ceased? A. Yes, sir. Q. Were there any other houses? A. A gentle-

man by the name of Shinn, at Poplar and Fifteenth streets, used to order atomizers. His orders ceased for some reason.

\*     \*     \*     \*     \*     \*     \*     \*

Q. How about the orders from the wholesale houses? A. The orders from the wholesale houses were very few; they decreased very much. Q. You did mention the house of Smith, Kline & Company; were there any other wholesale houses from which your orders ceased? A. Shoemaker & Bush.

\*     \*     \*     \*     \*     \*     \*     \*

Q. Were there any other houses? A. Wholesale houses? I do not know whether Evans would come under that head. I think he would. The sales lessened in quantity, and Wyeth, we used to furnish atomizers to Wyeth, and these other establishments to be packed for their customers. Q. How about houses in other cities? A. In Montreal we used to sell three different wholesale houses, and we made some very good sales, but we fell off very suddenly. Q. In New York or Boston, or any other cities? A. Mostly from New York or Brooklyn. Q. How about the orders from those houses? A. They all fell off. They asked the question why they could not buy the atomizers—[1]

Plaintiff's points were among others as follows:

4. If the jury find either that the defendants continued to use the name, Burgess, and the label after the plaintiff had objected to the use of it, or that they used the same on the boxes containing their atomizers without any words to indicate that they were the manufacturers of them, the jury may infer that the defendants used them with a fraudulent intent to sell their goods as and for the goods of the plaintiff. *Answer:* I affirm that point. [2]

5. The name, Burgess, and the label affixed to the boxes by the defendants being an exact simulation of those used by the plaintiff, the jury may infer from this exact similarity that the defendants used the same with a fraudulent intent to sell their goods as and for the goods of the plaintiff. *Answer:* I affirm that point. [3]

Defendants' points were among others as follows:

1. If the jury believe from the evidence that the name, "The Burgess," was first applied to these atomizers as a designation or description of a particular kind or pattern of atomizer, then

the name immediately became public property which could not be appropriated by the plaintiff as a trade-mark, and the plaintiff has no right to recover in this action. *Answer:* I decline that point. [4]

4. If the jury believe from the evidence that the trade or public do not recognize the "Burgess" atomizer as an atomizer made or sold by the plaintiff, but that they understand by a " Burgess " atomizer merely an atomizer of the same pattern as that sold by the plaintiff, then the plaintiff has no right of trade-mark in the name " Burgess " as applied to this atomizer, and the verdict should be for the defendant. *Answer:* I decline that point. [5]

5. If the jury believe from the evidence that the defendant did not so use the name "Burgess " in connection with these atomizers as to deceive the trade and public and lead them to believe that the " Burgess " atomizers put upon the market by the defendants were those made or sold by the plaintiff, then the plaintiff is not entitled to recover in this action, and the verdict must be for the defendants. *Answer:* I decline that point. [6]

Verdict for plaintiff for $1,250. Judgment for $400, the plaintiff having remitted all in excess of that amount. Defendants appealed.

*Errors assigned* were, (1) rulings on evidence, quoting the bill of exceptions ; (2–6) above instructions, quoting them.

*Richard C. Dale, Frederick M. Leonard* and *Chas. H. Bannard* with him, for appellants.—It is well settled that damages in trade-mark cases must be proved, not determined from mere conjecture independent of the evidence : Brown on Trade-marks, sec. 505 ; Carter v. Baker, 4 Fisher, 404; Dobson v. Hartford Carpet Co., 114 U. S. 439 ; Dobson v. Dornan, 118 U. S. 10.

Where a name either was originally, or has since become, merely descriptive of the article to which it is attached, or descriptive of a particular quality or pattern of an article, it cannot be protected as a trade-mark : Leclanche Battery Co. v. Western Electric Co., 23 Fed. Rep. 276 ; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 31 Fed. Rep. 776 ; Thomson v. Winchester, 19 Pick. 214 ; Singer Mfg. Co. v. Stanage, 6 Fed. Rep. 279.

Customs of trade govern questions of trade-mark: Sheppard v. Stuart, 7 W. N. C. 498; Weed v. Patterson, 12 Abb. Pr. N. S. 178.

When an article is made that was theretofore unknown it must be christened with a name by which it can be recognized and dealt in, and the name thus given it becomes public property: Hostetter v. Fries, 17 Fed. Rep. 620; Lawrence Mfg. Co. v. Tenn. Mfg. Co., 31 Fed. Rep. 776; Ex parte Heyman, 18 Off. Gaz. 922.

It cannot be questioned that the gist of an infringement of trade-mark is deceiving the trade or public and leading them to believe that the article made and sold by the defendants is the plaintiff's article. Without such deception there can be no damage to the plaintiff: Sheppard v. Stuart, 7 W. N. C. 498; Dixon Crucible Co. v. Guggenheim, 7 Phila. 408; Amoskeag Mfg. v. Spear, 2 Sanford, 599; Magee Furnace Co. v. Le Barron, 127 Mass. 115.

*Rudolph M. Schick*, for appellee.—The plaintiff here has a trade-mark for the atomizers made by him: Hoyt v. Hoyt, 143 Pa. 623; Ford v. Foster, L. R. 7 Ch. App. 611.

The cases cited by appellant in support of his position relate to articles which had been patented, where the owners of the patent attempted to perpetuate their monopoly under the guise of a trade-mark: Leclanche Battery Co. v. Electric Co., 23 Fed. Rep. 276.

There was some evidence that the surgical instruments were frequently called by the name of their inventors, and no claim of trade-mark was made. This was explained by Dr. Seilar to be in pursuance of a code of medical ethics binding on physicians. As the plaintiff is no physician it cannot bind him, and even if others may choose neither to patent their inventions nor to seek the protection of a trade-mark it cannot deprive the plaintiff of his right. The answers to the court complained of in the second and third assignments of error, in answer to plaintiff's points, amounts only to an affirmance that the defendants' exact simulation of plaintiff's name and label, and their continuance of the use of them after the plaintiff had objected to it, and the omission of their own name as manufacturers from the boxes containing the simulated label, was evidence of an intent

to sell their goods as and for the plaintiff's: Sebastian on Trade Marks; Glenny v. Smith, 2 Drewry & Sm. 480; Blofield v. Payne, 4 B. & Ad. 410; Frese v. Bachof, 14 Blatch. C..C. 432; Singer Mfg. Co. v. Loog., L. R. 18 Ch. Div. 395; Singer Mfg. Co. v. Loog, L. R. 8 App. Cas. 15; Crucible Co. v. Guggenheim, 7 Phila. 408.

The plaintiff was allowed on the trial to show the extent to which his sales had declined after the infringement by defendants. This was competent evidence of damages: Marsh v. Billings, 7 Cush. 322; Conrad v. Uhring, 98 Missouri, 277; Blofield v. Payne, 4 B. &. Ad. 410; Taylor v. Carpenter, 2 Woodb. & M. 1; Atlantic Milling Co. v. Robinson, 20 Fed. Rep. 217; Peltz v. Eichele, 62 Mo. 171.

The cases cited by appellee are design patent cases, and are in no way applicable to this case. Dobson v. Carpet Co., 114 U. S. 439, was a case in equity in which the respondent had infringed a patented design for carpets.

OPINION BY MR. JUSTICE MITCHELL, April 13, 1896:

The plaintiff gave evidence of the falling off of his custom concurrently with defendants' beginning to use the trade-mark, and claimed that the former was the consequence of the latter. It is difficult to see how else he could prove his loss, for he could not follow his customers individually and testify where they went to buy when they ceased to come to him. The inference was for the jury. In the language of the logicians he proved the sequence of the events, and it was for the jury to say whether the deduction from post hoc to propter hoc was rightly drawn. The learned judge left it to them with a very full caution, accompanied by illustrations, that a diminution of sales might be due to very many causes. This was as much as defendants were entitled to ask.

The second and third assignments of error are to the affirmance of plaintiff's points, allowing the jury to infer a fraudulent intent to sell defendants' goods as those of the plaintiff, from the use of the name and the label. These points must be considered in connection with the admitted facts. Defendants not only used the name which plaintiff had adopted but also the exact pictorial representation of the article. It was not an accidental resemblance but an admittedly intentional copy, the

defendants' excuse being that they supposed the name was a
merely descriptive one which any one might use, and as to the
picture, that there was a custom of the trade for dealers to
"borrow" each other's cuts for advertising purposes.   This
explanation may be entirely true, and what defendants did they
may have done ignorantly and innocently, but their acts were
susceptible of a different interpretation (see Taylor v. Carpen-
ter, 11 Paige, 292; 2 Sandf. Ch. 603); and it was for the jury
to say what was their true intention.   The judge could not have
taken this question from them, nor could he have instructed
them that such a custom if proved would be a defense.   No
custom of other people even in the same trade can excuse one
man for taking another's property without his consent.   The
effect of the affirmance of these points was not as appellants
argue to sweep away their defense, but only to put their actions
in the two aspects claimed by them and by the plaintiff respec-
tively before the jury for them to decide.   In this there was no
error.

The remaining assignments of error are based on the refusal
to affirm defendants' points relative to the title "Burgess" as
a merely descriptive word not susceptible of appropriation as a
trade-mark.   There was however a radical defect in each of
these points which prevented its affirmance, and that was the
complete disregard of the admitted facts of the case.   The
plaintiff with the aid of a physician invented the instrument,
and although he did not, and perhaps not being the sole in-
ventor could not, patent it, he did adopt and attach the name of
his partner Burgess to distinguish his make of atomizer, and
invented and used a certain pictorial representation of it for
the same purpose.   It appears that it is an imperative rule of
ethics, enforced as a by-law of the College of Physicians of
Philadelphia, and highly honorable to the medical profession,
that a physician who discovers a remedy, or a surgeon who
invents or improves an instrument, does not take a patent or a
trade-mark for it, but dedicates it at once to the service of
humanity, and though it may become known by his name it is
nevertheless free for all to use, and the name is regarded as
merely descriptive of the article.   It was defendants' error or
misfortune to have assumed that the present was such a case,
and to have used the name accordingly.   Plaintiff, however,

is not a physician but an inventor and instrument maker, and testified that he gave his invention the name of his partner, Burgess, to identify it, and because it was also at that time attached to a pump and air compressor made by him and his partner, which worked on a similar principle and was also called the Burgess. Defendants seek to avoid the consequences of their mistake of fact (assuming that it was innocent, though the jury have found otherwise) by showing that other dealers made the same mistake, and their points asked the judge to say that under the circumstances plaintiff could not appropriate a descriptive name of this kind as a trade-mark. Cases are cited to this effect, which need not be discussed specially, as the principle is unquestionable. As said by WALLACE, J., in Leclanche Battery Co. v. Western Electric Co., 23 Fed. Rep. 276, " when an article is made that was theretofore unknown, it must be christened with a name by which it can be recognized and dealt in, and the name thus given it becomes public property, and all who deal in the article have the right to designate it by the name by which alone it is recognizable." This is indisputable, but it does not follow that all proprietary names thereby become merely descriptive of the kind of article. The presumption is to the contrary. Regard must be had to the purpose of the title adopted. If in addition to the designation of the article it is meant also to indicate the manufacturer, then it has the essential element of a trade-mark and does not become public property. Thus when Daguerre made his great discovery of the means of producing permanent pictures by the agency of light they were called Daguerreotypes, and that name of course became public property because it was the only name by which the things were known. But if he had opened a gallery and called his productions L. J. M. Daguerre's sun pictures or any similar name, no one could have doubted that while the designation sun pictures might become public property yet the inventor had not parted with his exclusive right to the use of his own name in connection therewith. And it would have been no excuse for an infringement by another producer, that he thought the name of Daguerre was a mere descriptive word to distinguish the kind of pictures from talbotypes, ambrotypes, photographs and other kinds of sun pictures which followed rapidly in the path of the original discovery.

Practically this was all the defense made by appellants in the present case. The theory on which their case was defended and their points drawn, if it proved anything proved too much, for its line of reasoning would deprive every inventor or maker of the use of his own name as a trade-mark. If the plaintiff instead of using his partner's name, Burgess, had selected that which most accurately and exclusively indicated his rights, and called his invention J. Elliot Shaw's atomizer, defendants' points would have required the judge to charge the jury that an infringement could be justified on the ground that the defendants and other dealers understood J. Elliot Shaw to be the surgeon who invented the instrument and his name a mere descriptive title to distinguish that particular form of atomizer from other kinds. A man's property is not to be taken away so easily. The descriptive name of the instrument was an atomizer. That was public property and could not be appropriated as part of a trade-mark by any one. But when the inventor and manufacturer of a new kind of atomizer put his own or his partner's name to it the presumption was that he did so to indicate its origin and maker, and intended the name as a trade-mark. That defendants and some other dealers misunderstood the facts was not sufficient to excuse a violation of plaintiff's rights, or to justify the affirmance of points which would have been equivalent to a direction to find for defendants.

The last point of defendants was objectionable for another reason. It asked the judge to say that if defendants did not so use the name as to deceive the public the plaintiff could not recover. It is not necessary that the public should be actually deceived in order to afford a right of action. All that is required is that the infringement should have a tendency to deceive. The gist of the action is the intent to get an unfair benefit from another's trade. Actual deception of the public is only material to the question of damages. On that matter there was not only the use of the name Burgess but also the admitted imitation of the label or wrapper. The case was properly left to the jury.

Judgment affirmed.