## WINTHROP CHEMICAL CO., Inc., v. WEINBERG.

### No. 4836.

Circuit Court of Appeals, Third Circuit.

July 26, 1932.

Edward S. Rogers, of New York City, and Robert T. McCracken, and C. Russell Phillips, both of Philadelphia, Pa., and James F. Hoge, of New York City, for appellant.

Samuel Packman, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

462

BUFFINGTON, Circuit Judge.

This case concerns phenobarbital, a sedative and hypnotic drug extensively prescribed in epilepsy and various diseases. Since 1919 the Winthrop Chemical Company, a corporation of New York, has manufactured and sold medical and chemical preparations to physicians and pharmacists. These articles have been of such excellence and dependability as to win the confidence of physicians and lead them to specifically prescribe them. The company does not deal with the public, but seeks only the patronage and good will of physicians and pharmacists. Among other means used to that end, it spends large sums in advertising in trade journals patronized by the medical and drug professions. A number of years ago it undertook to prepare a dependable phenobarbital, and for such preparation it created and gave to it the original name of Luminal. This Luminal brand of phenobarbital has so grown in favor that up to the filing of the bill eleven and a half million packages of it have been sold. In gaining this trade, the company has in the last seven or eight years annually spent in advertising from seventy-five to a hundred thousand dollars. As the proof is that phenobarbital "is a potent drug and is not to be prescribed without care and careful consideration for the safety of the patient," it follows that, while the physician is deeply concerned professionally in the integrity of the phenobarbital used in filling his prescriptions, the patient who uses it, and who pays the druggist who fills it, is even more vitally interested in getting the phenobarbital his trusted physician directs. In that regard we agree with the old-fashioned honesty as testified to by a physician of repute who says: "When the physician has diagnosed and prescribed for a patient, he certainly expects his prescription to be filled without any deviation whatever, and if it is not, the consequences are likely to be serious for all parties concerned. This is especially true in prescribing a drug used as a sedative and hypnotic."

In addition to its trade good will, the Winthrop Chemical Company has a registered trade-mark of the word "Luminal," No. 155,871, dated June 6, 1922, with the claim that it or its predecessors had used it since March 1, 1912. Luminal is put up in metal cases of a form and description which insure its authenticity in the hands of the druggist, as well as its being a product of the Winthrop Chemical Company and as made by the Bayer Company, the compounder. The proof is that it is well known to the profession, and that it has gained its confidence and regard. In that respect the evidence is: "The Luminal brand of phenobarbital bears a high reputation and that doctors have great confidence in it. They feel that they know the precaution with which it is put up and sold, and that they may prescribe it with confidence as to the therapeutic effects to result from its use."

The care with which Luminal is prepared is proved by William C. MacLennan, chemist in charge of the analytical department of the well-known and reputable Bayer Company, which makes Luminal for the Winthrop Company. He says: "One of my duties is to check up on all Luminal manufactured by The Bayer Company, Inc. for Winthrop Chemical Company, Inc. For this purpose a sample from every batch of Luminal manufactured is submitted to me for analysis and test. Either I, personally, or some other chemist under my supervision makes one or more analyses and tests on every sample. As a result, I am thoroughly familiar with the formula and constituents of genuine Luminal and am able to determine positively and definitely whether any product tested by me is Luminal or not."

We have given due consideration to the affidavits produced by both sides, with the result that we find the facts to be as stated by affiants for the plaintiff, whose testimony we quote. Their experience, standing, and opportunities, both in Philadelphia and New York, to personally know the matters to which they testify, carries a weight the defendant's affiants do not.

As to what is meant by Luminal, the trade-name, we have the testimony of the dean of the Philadelphia College of Pharmacy that, "To me, and I believe to the pharmaceutical and medical profession generally, the word Luminal is not the descriptive name of a substance, but is the name by which a particular make of a substance is distinguished. In short, Luminal is Winthrop's brand of phenobarbital."

To the same effect is the evidence of a New York physician of such wide hospital staff connection in that city as gave him an opportunity to know: "When a physician prescribes Luminal, he means the Winthrop brand of phenobarbital and expects the druggist to fill the prescription with that particular product. He does not mean that the druggist may give any or no brand of phenobarbital. So far as my knowledge and experience goes, there is no uncertainty in the medical and pharmacal professions respect-

ing the descriptive name of the substance in question. That name is phenobarbital. Likewise, there is no uncertainty respecting the name Luminal. It is understood that it is the trade-mark name for the Winthrop brand of phenobarbital."

Another physician of prominent hospital staff connection in that city deposed: "I am well acquainted with a chemical substance known as phenobarbital. That is the name of that substance, and as such is well known in the medical and pharmacal professions. I am also acquainted with the name Luminal. That is the trade-mark name of the Winthrop Chemical Company of New York for the chemical substance phenobarbital. Phenobarbital is sold by different houses. There are different brands of it, and some of it has no brand. If it is desired to have the brand which is sold by the Winthrop Chemical Company, one may identify it by the name Luminal. That name is well known in the medical and pharmacal professions as identifying Winthrop Chemical Company's brand of phenobarbital."

The further affirmative proof by respectable disinterested pharmacists in Philadelphia is summarized by one who says: "In connection with my business, I have become acquainted with a large number of physicians and pharmacists in this City. For many years I have known the drug 'Luminal.' I know that this name 'Luminal' means to me and to physicians and pharmacists generally in this vicinity a particular brand of phenobarbital, manufactured by Winthrop Chemical Company. There are several other brands of phenobarbital, but the word 'Luminal' is never used to designate any other brand. It is not a generic term but is the trade name of the Winthrop Chemical Company."

From the proofs it appears that a physician of this city, on four different occasions, issued prescriptions directed to the Alden Park Pharmacy, the defendant, in each of which he specified Luminal to be put up in capsules and taken as directed. These four prescriptions were filled by the defendant and paid for by the person for whom the prescription was given and filled. Subsequently such medicine was sealed and sent to MacLennan, who, as noted above, was in charge of the analytical department of the Bayer Company, whose testimony is: "On October 5, 1931, I broke the seal and tested the contents of some of the capsules to determine whether or not the product was Luminal distributed by the Winthrop Chemical Company, Inc. and manufactured by The Bayer Company, Inc. I also made a recheck on the same day. As a result I state positively that the product was not Luminal."

As the proof is that Luminal commands a higher price than unbranded phenobarbital costs a druggist, the purpose of the defendant in surreptitiously substituting a different phenobarbital than the one ordered by the doctor is clear. No contention is made that any mistake was made or that the druggist did not have Luminal on hand. In fact, he justifies his conduct and asks this court to approve of his deceptive substitution. This we decline to do. The question before us is simply a case of dishonest deception, and, as said in Vick Chemical Co. v. Vick Medicine Co. (D. C.) 8 F.(2d) 49, 50, the "underlying principle of law of unfair competition is to prevent substitution by deception," a principle recognized by this court in Rosenberg Bros. & Co. v. Elliott (C. C. A.) 7 F. (2d) 962. In ordinary commercial affairs, "substitution by deception" is wrongful, but, when in the healing art there is "substitution by deception," greed may reach the grade of malice.

Accordingly, we direct the court below to issue the preliminary injunction prayed for.