## Thomson-Porcelite Co. *v.* Harad (et al., Appellants).

Argued January 6, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*I. Herbert Rothenberg,* for appellants.

*Abraham L. Freedman,* with him *Bernard Eskin* and *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, March 24, 1947:

Thomson-Porcelite Co., appellee, filed this bill in equity to enjoin Benjamin Harad, trading as General Paint & Varnish Co., and Porcelene Paint Co., Arthur S. Harad, Mary Harad and Annie Harad, from using the trade-name "Porcelene" in the advertisement and sale of competitive paint products, contending that said name was deceptively similar and constituted trade-mark infringement and unfair competition. The court

below dismissed exceptions to the Chancellor's adjudication and perpetually enjoined appellants from using the name "Porcelene." A rule granted to show cause why a new trial should not be granted because of after-discovered evidence was discharged. Mary Harad and Annie Harad took this appeal.

Thomson-Porcelite Co., appellee, is a Pennsylvania corporation engaged in the manufacture and sale of paint and paint products, including enamel, since 1889. The trade-mark and trade-name "Porcelite" has been used to identify a certain enamel paint manufactured and sold by it since 1892. On February 18, 1908, appellee caused the name "Porcelite" to be registered in the United States Patent Office, which registration was renewed as of February 18, 1928. As a result of the advertising and use of the name in connection with the sale of its product throughout the United States, "Porcelite" has become favorably known in the trade and among the general public, and as identifying the product of appellee.

Appellants have been engaged in the manufacture and sale of paint products for approximately 14 years. The name "Porcelene" was adopted and used by them five or six years prior to institution of the present action. It was displayed on various labels attached to, and accompanying containers in which appellants' paint was sold. The Chancellor found that the name "Porcelene" is "Deceptively similar to 'Porcelite' and is likely to deceive persons purchasing [appellants'] product into believing that it is the product of the [appellee]." This was done with full knowledge of the existence and use by appellee of the name "Porcelite" and without appellee's consent. Appellants were requested to refrain from using the name "Porcelene" but have refused to do so. The above facts were found by the Chancellor and approved by the court *en banc*. They are supported by the evidence and thus have the force and effect of the verdict of a jury.

Appellants contend that: (1) appellee has failed to prove that the word "Porcelite" has acquired a "secondary meaning"; (2) the words "Porcelite" and "Porcelene" and the manner in which they are used are so distinct that the latter is neither deceptively similar nor reasonably likely to cause confusion; and (3) appellee is barred by laches.

Where use of a particular trade-mark or trade-name has resulted in recognition of the same by the general public as identifying the product of a certain manufacturer, use thereof by another will be restrained as unfair competition:. *Quaker State Oil Refining Co. v. Steinberg*, 325 Pa. 273, 279, 189 A. 473, 476. That the court below did not specifically base its decree upon trade-mark infringement or upon unfair competition, is of no consequence. ". . . the common law of trade-marks is but a part of the broader law of unfair competition": *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 Sup. Ct. 357. "Any name, geographical or otherwise, applied to a product, becomes an asset to the person who advertises and markets that product as soon as the public begins to associate that name with that product": *Hartman v. Cohn*, 350 Pa. 41, 43, 38 A. 2d 22, 24. It is immaterial, therefore, whether the name "Porcelite" is incapable of becoming a valid trade-mark. Use of that name throughout the country for more than 40 years and association by the public of that name with appellee's product is sufficient to maintain the present action.

Appellants' contention, that the words "Porcelite" and "Porcelene" and their manner of use are so distinct that the latter cannot be said to be deceptively similar nor reasonably likely to cause confusion, cannot be sustained. "In determining whether the actor's designation is confusingly similar to the other's trade-mark or trade name, the following factors are important: (a) the degree of similarity between the designation and the trade-mark or trade name in (i) appearance; (ii) pro-

nunciation of the words used; (iii) verbal translation of the pictures or designs involved; (iv) suggestion; (b) the intent of the actor in adopting the designation; (c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other; (d) the degree of care likely to be exercised by purchasers": Restatement, Torts, section 729. In the instant case, the labels displayed are quite similar in appearance. While close examination of the various exhibits reveals differences in detail, their total effect is one of similarity. That the pronunciation is similar, is self-evident. Whether adoption by appellants of the name "Porcelene" was innocent or for the purpose of deceiving prospective purchasers, and securing unfair benefits from appellee's good will and reputation, may best be determined from the fact that the name "Porcelite" was known to appellants. The objection of appellee, to the use of the name and other surrounding circumstances, e. g., the purpose for which the name was adopted, and its subsequent use, are but a few of the facts which justify the inference of confusing similarity. The intended and actual use of the name "Porcelene" was identical with appellee's use of the word "Porcelite."

Appellants contend that there is no proof of actual deception or confusion among the purchasing public. "It is not necessary that the public should be actually deceived in order to afford a right of action. All that is required is that the infringement should have a tendency to deceive. The gist of the action is the intent to get an unfair benefit from another's trade. Actual deception of the public is only material to the question of damages": *Shaw & Co. v. Pilling & Son,* 175 Pa. 78, 87, 34 A. 446, 447. Whether the label or mark is reasonably calculated to deceive the public into purchasing an article manufactured by a person other than the one offering it for sale is the criterion: *Scranton Stove Works v. Clark,* 255 Pa. 23, 27, 99 A. 170, 172. It is sufficient that appellants' use of the word in the manner

126

complained of is reasonably likely to produce confusion in the public mind. Cf. *Hartman v. Cohn,* supra, 38 A. 2d at 25. If evidence of the tendency to confuse were needed, the testimony of Martin Address, appellee's former salesman, that, at first glance, he mistook appellants' product for that of appellee's, would constitute strong evidence in that regard. The law of unfair competition is not for the protection of experts but the general public: *J. N. Collins Co. v. F. M. Paist Co.,* 14 F. 2d 614. We have considered the cases relied upon by appellants and have concluded they are not controlling.

The contention that appellee is barred by laches is untenable. In *Klepser v. Furry,* 289 Pa. 152, 159, 137 A. 175, this Court said: "In suits for unfair competition or infringement it is well settled that mere laches in the sense of delay to bring suit does not constitute a defense. Such laches may bar an accounting for past profits, but will not bar an injunction against a further continuance of the wrong."

The decree of the court below is affirmed. Costs to be paid by appellants.