## Goebel Brewing Company, Appellant, *v.* Esslingers, Inc.

Argued January 14, 1953. Before STERN, C. J., JONES, BELL, CHIDSEY and ARNOLD, JJ.

*C. Russell Phillips,* with him *Harry E. Allen* and *Montgomery, McCracken, Walker & Rhoads,* for appellant.

*Lemuel B. Schofield,* with him *W. Bradley Ward,* for appellee.

OPINION BY MR. JUSTICE JONES, March 23, 1953:

The plaintiff sued to enjoin the defendant from "imitating or using the trademark, trade name, advertisements, bottle style or dress of the Plaintiff or any near similarity thereto, upon or in connection with beer or with the manufacture or sale thereof" in Pennsylvania or elsewhere within the plaintiff's sales area and, more specifically, to enjoin the defendant from "using the name 'Goblet' upon or in connection with the sale of beer within the area aforesaid." The bill also prayed for an accounting for profits to the defendant and damages to the plaintiff flowing from the defendant's allegedly unfair competition. The defendant answered to the merits. After a hearing, the learned chancellor dismissed the bill of complaint at the plaintiff's costs on the basis of an adjudication and decree nisi to which the plaintiff filed exceptions. The court en banc dismissed the exceptions and entered the decree nisi as the final decree. This appeal by the plaintiff followed. The material facts are not in dispute. The differences lie in the inferences to be drawn from them.

The plaintiff, Goebel Brewing Company, is a Michigan corporation engaged in the manufacture and sale of beer and having its place of business and principal plants in that State. It began selling its product in Philadelphia in 1934. By 1939, its sales of beer were nation-wide. At that time, it commenced selling its beer in small "steinie" type bottles of seven-ounce capacity in Philadelphia and elsewhere. For the twelve-year period preceding the institution of the suit, the plaintiff's sales of its seven-ounce bottles of beer in Pennsylvania aggregated, in round figures, about 6,000,000 cases of twenty-four bottles each, of which sales ninety-five per cent were in Philadelphia. Throughout the years, Goebel Company has changed its labels, but it has always used the name "Goebel" thereon no matter what the form of the label happened to be.

The defendant, Esslinger, Inc., is a Pennsylvania corporation having its place of business and plant in Philadelphia. It, too, is engaged in the manufacture and sale of beer which it has brewed and sold since 1868. In 1939, Esslinger, Inc., also began selling beer in seven-ounce bottles in Philadelphia and vicinity. It sold beer so bottled under its trade name "Esslinger" as the rest of its beer was, and had been, sold in Philadelphia regardless of packaging. The Esslinger seven-ounce bottles were not "steinies"; they were merely a smaller type of the conventionally shaped export bottles. The sales of the seven-ounce bottles labeled "Esslinger" were not good, possibly due to the fact that eight ounces of Esslinger beer from draught cost the customer five cents less than the seven-ounce bottle of the same beer, i.e., five cents more cost for an ounce less of beer. The costs of production were high because the export shaped seven-ounce bottle did not fit in the defendant's bottling machines thus requiring

a change-over for the filling of such bottles. Breakage also was high and much time was consumed daily in effecting the necessary bottling change-over. As a result, the defendant, in August 1950, adopted the seven-ounce "steinie" shaped bottle, professedly, in order to reduce the breakage and to eliminate the necessity for a change-over in the bottling machines. At the same time, the defendant decided upon a different name for its new seven-ounce bottle and content so as to avoid the possibility of self-competition. The beer remained the same however. The name the defendant chose for the new package was "Goblet". An officer of the company, who had participated in the selection of the new name, testified that he knew that seven-ounce "steinie" bottles bearing the trade name "Goebel" were widely sold in Philadelphia but that, in selecting "Goblet", he had given no thought to Goebel's market. He further stated that the inspiration for "Goblet" as a name for a beer had come from souvenir goblets bearing the trade name "Esslinger" which the defendant had previously distributed to dealers in the Carolinas as a part of a sales campaign there.

The plaintiff, by letter of its attorneys dated December 15, 1950, protested the defendant's use of the name "Goblet" to identify its beer in "steinie" bottles. The exact time the defendant started marketing "Goblet" is not disclosed by the record, but it was some time between its decision in August 1950 to change to "steinie" bottles and adopt the name "Goblet" and the first advertisements of the product, so bottled and labelled, in April of 1951. Part of the defendant's advertising campaign was aimed at retailers and stressed the greater profits to be made by their sale of "Goblet" beer. Due to a differential in transportation costs in favor of Esslinger, the retailer in Philadelphia could make a cent more on the sale

of a "Goblet" than a "Goebel". During the summer
and early autumn of 1951 the plaintiff, by extensive
"shopping around", discovered considerable "passing
off" by bartenders and tavern keepers of "Goblets" for
"Goebels". Calls for "Goebel" were frequently filled
with "Goblet" without excuse or explanation by the
server. The experience of six persons whom the plain-
tiff employed to go to taverns and ask for "Goebel"
was that, in about half the instances, they were given
"Goblet" without comment; and, not once, was a beer
other than "Goblet" substituted when a "Goebel" was
ordered.

The plaintiff, concluding on the basis of these facts
that it was being subjected to unfair competition by
the defendant, brought this suit in equity on the theory
that "Goblet" is so similar to "Goebel", especially in
sound and appearance, as to produce confusion and
to make available to unscrupulous persons the means
of exploiting the deception to the plaintiff's injury.
The chancellor rejected the contention. In his nine-
teenth finding of fact he states that "The name 'Gob-
let' is not deceptively similar to the name 'Goebel'
either in appearance, sound or meaning." His third
conclusion of law (really an ultimate conclusion of
fact) found that "It is not reasonably likely that the
average purchaser will be confused, misled or deceived
by any similarity between the two names."

The development of the law of unfair competition
in America was, in large measure, the work of our fed-
eral courts during the period when they exercised the
power, on the authority of *Swift v. Tyson,* 16 Peters 1
(1842), to declare the law applicable to commercial
transactions independently of local decision. See Nims,
*Unfair Competition and Trade-Marks,* 4th Ed., Vol. 1,
pp. 25-26. It is local law, however, that governs ques-

tions of common law liability for unfair competition as well as for infringement of trade names: see *Pecheur Lozenge Co., Inc., v. National Candy Co., Inc.,* 315 U. S. 666; *Anheuser-Busch, Inc. v. DuBois Brewing Co.* (C.C.A. 3), 175 F. 2d 370; *Campbell Soup Co. v. Armour & Co.* (C.C.A. 3), 175 F. 2d 795. Since the overruling of *Swift v. Tyson* by *Erie Railroad Co. v. Tompkins,* 304 U. S. 64, in 1938, the applicable law in federal courts in controversies such as the present is no longer independently declared but is the *lex loci delicti.* As a result of the situation that had grown up over almost a century under *Swift v. Tyson,* the law of unfair competition, as it existed in the various states at the time of the advent of the *Tompkins* case, was more or less outmoded or incomplete: see *National Fruit Product Co., Inc. v. Dwinell-Wright Co.,* 47 F. Supp. 499, 503-504 (D.C. D. Mass. 1942). Pennsylvania, as well as New York and Massachusetts, happened to have a relatively sizeable and up-to-date body of substantive law on the subject, but it is small by comparison with the extensive jurisprudence in such connection to be found in the federal reports; and, as many of the decisions are peculiar to their separate factual bases, they furnish illustrations of the law as applied rather than principles. Consequently, their effect as pertinent authority is limited. A further source of authority lies in the federal cases which have originated subsequent to the *Tompkins* decision and which presumptively follow the law of the state wherein the federal forum is located. And, of course, the federal cases prior to *Tompkins* naturally continue to be a persuasive influence since, as we have seen, such cases reveal the past growth and development of the general principles of the law governing unfair competition. The need for resort, in a case such as this, to the federal decisions is evident.

The common law of trade-marks and trade names (apart from any statutory law pertaining to such matters) is a portion of the broader law of unfair competition. In *Hanover Star Milling Company v. Metcalf*, 240 U. S. 403, 413, the Supreme Court said,—"This essential element [i.e., "passing off" or deception] is the same in trade-mark cases as in cases of unfair competition unaccompanied with trade-mark infringement. In fact, the common law of trade-marks is but a part of the broader law of unfair competition [citing cases]." The action for unfair competition "exists today separate and apart from any statutory rights which the owner of a trade-mark possesses": *House of Westmore, Inc. v. Denney* (C.C.A. 3), 151 F. 2d 261, 265. In *Manz v. Philadelphia Brewing Co.* (D.C.E.D. Pa. 1940), 37 F. Supp. 79, 80, it was recognized that ". . . trade-names can only be protected against use or imitation on the ground of unfair competition." The gist of the action lies in the deception practiced in "passing off" the goods of one for that of another: see *B.V.D. Co. v. Kaufman & Baer Co.*, 272 Pa. 240, 242, 116 A. 508; *Pennsylvania Central Brewing Company v. Anthracite Beer Company*, 258 Pa. 45, 50, 101 A. 925; *Coca-Cola Co. v. Busch*, (D.C.E.D. Pa. 1942), 44 F. Supp. 405, 407. As was said in *Vick Chemical Co. v. Vick Medicine Co.* (D.C.S.D. Ga.), 8 F. 2d 49, 50, and quoted (a paraphrase) with approval in *Winthrop Chemical Co., Inc. v. Weinberg* (C.C.A. 3), 60 F. 2d 461, 463,—"the 'underlying principle of law of unfair competition is to prevent substitution by deception,' a principle recognized by this court in Rosenberg Bros. & Co. v. Elliott (C.C.A.) 7 F. (2d) 962."

The question, then, is whether the name "Goblet" which the defendant adopted for its "steinie" bottles of beer is so similar to the plaintiff's trade name "Goebel" as likely to create confusion and thus facili-

tate deception by "passing off". The court below answered that question in the negative. The answer was a conclusion of ultimate fact, however, and therefore is not binding upon us even though the basic facts from which the conclusion was deduced were correctly found. We are free to draw our own independent conclusion from the directly proven facts as found by the chancellor. See, e.g., *Consolidated Home Specialties Company v. Plotkin*, 358 Pa. 14, 19, 55 A. 2d 404. In acting in such wise, the factors to be taken into consideration as listed in §729 of the Restatement, Torts, are as follows: "(a) the degree of similarity between the designation and the . . . trade name in (i) appearance; (ii) pronunciation of the words used; (iii) verbal translation of the pictures or designs involved; [and] (iv) suggestion; (b) the intent of the actor in adopting the designation; (c) the relation in the use and manner of marketing between the goods . . . marketed by the actor and those marketed by the other; [and] (d) the degree of care likely to be exercised by purchasers." While all of the foregoing tests are not material in Pennsylvania, we have approved and adopted §729 of the Restatement, Torts, generally: see *Thomson-Porcelite Co. v. Harad*, 356 Pa. 121, 124-125, 51 A. 2d 605; and *KoolVent Metal Awning Corporation of America v. Price*, 368 Pa. 528, 533, 84 A. 2d 296.

In the present case, both the plaintiff's and the defendant's products are sold to retail customers and consumed by them under substantially similar circumstances. It is not possible for the customer to exercise a very high degree of care as to the precise kind of beer served him. He asks for it by its name only. The beer for sale is not visible to the customer in advance, being kept in either a cooling tank or refrigerator underneath or behind the bar. The bartender reaches for a bottle, uncaps it and places it before the

customer along with a glass. The bottles in which "Goblet" and "Goebel" are sold are identical in color, size and shape. The labels on both are printed in not readily distinguishable colors with the respective six-letter name (five of the letters being common to both and each name beginning with "Go") inscribed on the label. The plaintiff is, of course, not entitled, nor does it claim any right, to pre-emption of the color, size or shape of the "steinie" bottle. But the whole ensemble makes the deception from the similarity of the names all the easier to "pass off". In *Grocers Baking Co. v. Sigler,* 132 F. 2d 498, 501 (C.C.A. 6), it was noted that "The identity of the oval [trade-mark] lends additional emphasis to the identity of the sound." And so, to the customer who protests being served a "Goblet" when he asked for a "Goebel", the bartender has a quick and plausible answer, viz., the similarity of the names. Thus, the saloon keeper or his bartender for him, eager for the larger profit, can safely substitute a "Goblet" for a "Goebel" and have a ready excuse for the "mistake" if called to account. The pecuniary interest to substitute the one for the other is material to the unfairness of the competition: see *N. K. Fairbanks Co. v. Ogden Packing & Provision Co.,* 220 Fed. 1002, 1003 (D.C. Utah). Other local beers in "steinies", although equally suitable to the saloon keeper with "Goblet" in price, are not available for substitution for a "Goebel" because of their obviously dissimilar names; and, as already stated, the experience of the plaintiff's "shoppers" was that never once was a beer other than "Goblet" substituted upon a request for a "Goebel".

The defendant argues that, where a "Goblet" was served when a "Goebel" was asked for, it must be assumed that the bartender did not have "Goebels" on hand because in none of the instances described was

there testimony that the bartender actually had "Goebels". But that is immaterial to the question here involved. If a bartender serves a "Goblet" to a man who asks for a "Goebel" without the customer's knowing or realizing it, it is "passing off" whether or not the bartender could have originally served what was asked for. The question of the actor's intent is of no exculpatory significance in Pennsylvania. It does not matter whether the substitution was innocent or deceitful. If the defendant's action produces confusion in the public mind, it constitutes unfair competition for which equity affords relief: *Thomson-Porcelite Co. v. Harad,* supra, p. 125; *Pennsylvania Central Brewing Company v. Anthracite Beer Company,* supra, p. 50; *American Clay Manufacturing Company v. American Clay Manufacturing Company,* 198 Pa. 189, 193-194, 47 A. 936; *Shaw & Co. v. Pilling & Son,* 175 Pa. 78, 87, 34 A. 446. The same answer is equally applicable to the defendant's further contention that if there was any "passing off" of "Goblet" for "Goebel", it was the independent work of overzealous bartenders and not of the defendant. In *Pennsylvania Central Brewing Company v. Anthracite Beer Company,* supra, where the "similarity of the containers [was] such as to naturally cause some customers to buy the Anthracite beer under the belief that they were getting the Robinson beer", this court recognized that the similarity also enabled retailers, who handled both beers, to substitute the one for the other, a situation for which the manufacturer is accountable.

The actionable wrong in a case of unfair competition based upon an alleged infringement of a trade name lies in the similarity of the names involved and not in their identity. For obvious reasons, a name is rarely copied exactly. In *Enoch Morgan's Sons Co. v. Ward,* 152 Fed. 690, 693, where the plaintiff's trade-mark for

a scouring soap product carried the name "Sapolio" and the defendant adopted the name "Sopono" for a like product, the Court of Appeals for the Seventh Circuit said,—"The infringer rarely has the hardihood to make a Chinese copy. In respect to both of these marks, if greater similarity were required to establish infringement, nothing short of identity would suffice." The court noted that the two names "as pronounced by persons of no great particularity in speech, would sound quite alike." The same is no less true here. If "Goblet" is pronounced with a long "o", either from ignorance or design, the two names sound very much alike. The fact that the *Ward* case, supra, was a suit for trade-mark infringement does not render its reasoning less pertinent presently: see *House of Westmore v. Denney,* supra. Many trade-mark cases also contain a count for unfair competition upon the one set of facts. In fact, trade-mark cases furnish interesting illustrations of trade names that have been enjoined because of their similarity in sound or appearance or both to names already established and known in the particular trade or business.[1]

---

[1] See, e.g., *Celanese Corporation of America v. DuPont ae Nemours & Co.,* 154 F. 2d 143, 144-145 (Ct. C. & P. A.), where the name "Clarifoil" was denied registration by the Commissioner of Patents as a trade-mark for a certain character of goods because of its similarity to the trade-mark "Clar-apel" already in use as a registered trade-mark for goods of similar type; also *idem v. idem,* 154 F. 2d 146, 148 (Ct. C. & P. A.), the name "Celdura" was likewise denied registration because of its similarity to the name "Cordura". In *Grocers Baking Co. v. Sigler,* supra, "Hon-E-Krust", as a name for bread, was held to infringe the name "Honey-Krust". Use of the name "Listogen" as a trade-mark was enjoined in *Lambert Pharmacal Co. v. Bolton Chemical Corporation,* 219 Fed. 325, 326 (D.C. S.D. N.Y.), because it infringed the already established trade name "Listerine". In *N. K. Fairbanks Co. v. Ogden Packing & Provision Co.,* supra, "Chefolene" as a trade-mark for a lard

A further principle of the law of unfair competition, of peculiar significance to the facts of this case, is that ". . . a person coming into a field already occupied by a rival of established reputation must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of the rival": *Gamlen Chemical Co. v. Gamlen*, 79 F. Supp. 622, 635-636 (D.C. W.D. Pa.), citing *Pennsylvania Central Brewing Company v. Anthracite Beer Company*, supra. Here, the vice president and general sales manager of the Esslinger company, who participated in the selection of the name "Goblet" for that company's seven-ounce "steinie" bottle, admits that he knew at the time of the choice of the name "Goblet" that "Goebel" beer in seven-ounce "steinie" bottles was being widely sold in the Philadelphia area and had been so sold for eight to ten years preceding. Yet, with a world of names and designations to choose from, the defendant invited confusion with the plaintiff's trade and customers by arbitrarily adopting as the new name for its beer a name similar in sound and appearance to "Goebel". In *Lambert Pharmacal Co. v. Bolton Chemical Corporation*, 219 Fed. 325, 326 (D.C. S.D. N.Y.), where the "second comer" to the particular field was enjoined from using the word "Listogen" to describe its product because a rival had previously adopted and established the name "Listerine" in the trade, Judge LEARNED HAND said,—"Of course, the burden of proof

---

substitute was enjoined because of its similarity to the trade name "Cottolene". The word "Telicon" as a name for clocks and other electrical devices was held to be an infringement of the name "Telechron": *Telechron, Inc. v. Telicon Corp.*, 97 F. Supp. 131, 142 (D.C. D. Del.). In our own case of *Thomson-Porcelite Co. v. Harad*, supra, the defendant was enjoined from using the trade name "Porcelene" for a type of enamel because it infringed the plaintiff's trade name "Porcelite" for the same kind of goods.

always rests upon the moving party, but having shown the adoption of a similar trade name, arbitrary in character, I cannot see why speculation as to the chance that it will cause confusion should be at the expense of the man first in the field. He has the right to insist that others in making up their arbitrary names should so certainly keep away from his customers as to raise no question." What that means is that, in circumstances such as are here present, *confusion* from the use of the similar trade name is the naturally appropriate inference and the burden is upon the "new comer" to overcome it.

In *Stork Restaurant, Inc. v. Sahati,* 166 F. 2d 348, 361, the Court of Appeals for the Ninth Circuit said that the ". . . thought that a newcomer has an 'infinity' of other names to choose from without infringing upon a senior appropriation runs through the decisions like a leitmotiv." To infer from the undisputed facts of the instant case, as the defendant would have us do, that it chose the name "Goblet" for its "steinie" bottle of beer because it had distributed some souvenir goblets (labelled "Esslingers" incidentally) in the Carolinas during a sales campaign there would require an undue stretch of one's credulity: cf. *Procter & Gamble Co. v. J. L. Prescott Co.,* 102 F. 2d 773, 775 (C.C.A. 3); *Stork Restaurant, Inc. v. Marcus,* 36 F. Supp. 90, 93 (D.C. E.D. Pa.). It is unnecessary, however, to conclude that the defendant purposely adopted the name "Goblet" for its "steinie" bottle in order to confuse the plaintiff's trade. It is sufficient that the name does so confuse and is capable of being used deceptively.

The defendant, in addition to denying that its "Goblet" is confusingly similar to "Goebel", raised two further defenses peculiar to equity, viz., (1) that the plaintiff came into equity with unclean hands and (2) that

it would be inequitable for the court to enjoin the defendant's use of its "Goblet" bottles because it has an investment in them in a large amount of money. The defendant bases its "unclean hands" contention on the fact that, whereas the "Goebel" bottles all bear the legend that the beer is "from the cypress casks of Goebel", only about one-third of the "Goebel" beer sold in Philadelphia actually comes from that type of cask. However, the representation is not such as touches the issue in controversy; nor does it change the equitable relationship of the parties. It does not, therefore, constitute a bar to the plaintiff's seeking equitable relief. See *Hartman v. Cohn,* 350 Pa. 41, 46, 38 A. 2d 22, where we quoted approvingly from *Comstock v. Thompson,* 286 Pa. 457, 461, 133 A. 638, as follows: " 'The maxim [as to "unclean hands"] is to be applied where the wrongdoing is in reference to the matter in dispute (Dempster v. Baxmyer, 231 Pa. 28), and must be connected with the controversy in litigation, so that it has in some way affected the equitable relations subsisting between the two parties, arising out of the particular transaction: Hays' Est., 159 Pa. 381.' " As to the second of such defenses, the plaintiff made timely objection to the defendant's proposed use of the name "Goblet" for its "steinie" beer and is therefore not estopped. Furthermore, such expenditures, even though innocently made in the conduct of a business under a name that infringes the plaintiff's trade name, do not create an equity in the offender that permits his continued use of the infringing name to the plaintiff's further harm.

The cases cited by the defendant are not in point. In *Philadelphia Dairy Products v. Quaker City Ice Cream Co.,* 306 Pa. 164, 176, 159 A. 3, the one presently significant holding was that a "lawless simulation of plaintiff's product . . . was properly enjoined." *Peters*

*Packing Company v. Oswald and Hess Company*, 334 Pa. 272, 5 A. 2d 361, justifiably held that "LONG LINK" and "NOLINK" as names for sausages were not confusingly similar, while in *Bickmore Gall Cure Co. v. Karns Mfg. Co.*, 126 Fed. 573, the "passing off" was not to be imputed to the defendant inasmuch as there was no similarity whatsoever between the trade names. Consequently, the issue in the instant case was not present in those cases.

Under the undisputed facts of record, appraised according to the tests laid down in §729 of the Restatement, Torts, which this court has heretofore approved and followed, the defendant's name "Goblet" for its "steinie" bottles is confusingly similar to the plaintiff's trade name "Goebel" on its like bottles. As the defendant entered the particular field of commerce with knowledge of the plaintiff's trade name and its prior use thereof on its "steinie" bottles, the defendant's use of the name "Goblet" on its "steinie" bottles constitutes an infringement of the plaintiff's trade name for which the plaintiff is entitled to injunctive relief: Restatement, Torts, §717 (1) (a) and (b). The learned chancellor correctly concluded as a matter of law that "The name 'Goebel' is a trade-name in the manufacture and sale of beer, and plaintiff is entitled to protection against its infringement."

We are unable to see how, in the circumstances of the case, the plaintiff could prove damages in monetary terms with required legal certainty. The question is really not involved on this appeal and we mention it only because the bill contains a prayer for damages.

Decree reversed at the appellee's costs and the record remanded with directions that an injunction issue in conformity with this opinion.

Mr. Justice BELL dissents.