504 A.2d 1316

**Dennis James CONTI, t/d/b/a Shear Perfection, Appellant,**

**v.**

**ANTHONY'S SHEAR PERFECTION, INC., A Pennsylvania Corporation and Anthony P. Bologna.**

Superior Court of Pennsylvania.

Argued Sept. 29, 1983.

Filed Feb. 3, 1986.

608

Lynn J. Alstadt, Pittsburgh, for appellant.

James R. Fitzgerald, Pittsburgh, for appellees.

Before BROSKY, McEWEN and BECK, JJ.

BROSKY, Judge:

This appeal is from an order in equity denying appellant's petition to protect as a trademark the name of his business. Appellant contends that the Chancellor erred in requiring secondary meaning as a prerequisite to protection under the relevant state and federal trademark statutes. In the alternative, he argues that the findings of fact establish such secondary meaning. We agree with the latter argument and, accordingly, reverse in part and affirm in part.[1]

## I.

The relevant facts, in chronological order, are as follows.[2] In March of 1978 appellant first advertised and then opened a hair styling salon called "Shear Perfection." Nearly a year later, in February of 1979, appellee opened a similar establishment just over 11 miles away by road called "Anthony's Shear Perfection." The following October appellee registered that name under the Trademark Statute. Almost five months later appellant registered also.

Thus, appellant was the first user but the second registrant; and appellant's first use occurred well before appellee's first registration.

Appellant brought an action in equity, seeking to have appellee enjoined from identifying his salon with the words "Shear Perfection" and for an accounting. The Chancellor held that since appellant had not established a secondary

1. Our finding under state law obviates the need for consideration of his claim under the federal trademark statute, the Lanham Act. 15 U.S.C.A. § 1501 *et seq.*

2. On January 9, 1978, before any of the other events in this case, appellant registered to do business under the Business Corporation Law. 15 P.S. § 1202 *et seq.* That registration cannot suffice for trademark purposes. The omission of an additional registration at that time under the then Pennsylvania Trademark Act, 73 P.S. § 12, *et seq.* put in doubt what would otherwise have been appellant's clear right to the trademark.

meaning—a public identification of those words with his place of business—he could not prevail. An appeal was timely taken to this Court.

## II.

The first determination to be made is whether appellee has, by virtue of his first registration, acquired a superior right to the combination of words "Shear Perfection." (Only if that question is answered in the negative would it be useful to consider appellant's rights to the trademark.) For two independent reasons we conclude as a matter of law that appellee's prior registration did not, given the particular facts of this case, give him the right to use the words in question.

## A.

 The first of these two reasons is that registry of a trademark, in and of itself, gives no right to exclusive use. In addition to registration the initial registrant must prove the originality of the registered mark and that the mark is not deceptively similar to the mark used by another. *Stroehmann Bros. Co. v. Manbeck Baking Co.*, 331 Pa. 96 at 99, 200 A. 97 at 99 (1938).[3] Appellee's registration satisfies neither of these elements.[4]

It was established at trial that the use of the words "Shear Perfection" was not original with the appellee, but with appellant. Consequently, the first element of the *Stroehmann* test was not met here.

**3.** The thrust of these requirements is that " '. . . a person coming into a field already occupied by a rival of established reputation must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of the rival.' *Gamlen Chemical Co. v. Gamlen*, D.C.W.D.Pa., 79 F.Supp. 622, 635–6 [1948] . . ." *Goebel Brewing Co. v. Esslingers, Inc.*, 373 Pa. 334 at 347, 95 A.2d 523 at 528 (1953).

**4.** The fact that the defendant in a trademark case has made substantial advertising expenditures to promote the challenged use does not bear on the equities of the case in his favor. *Goebel, supra,* 373 Pa. at 349, 95 A.2d 523 at 529. Thus appellee's expenses here are not a factor in our treatment of this case.

■ The second element of the *Stroehmann* test was also not met. There can be no doubt in common sense that "Anthony's Shear Perfection" is deceptively similar to "Shear Perfection." The law concurs. "... the infringement of a trade name lies in the similarity of the names involved and not in their identity." *Goebel,* supra, 373 Pa. at 345, 95 A.2d at 527.[5] Therefore, the addition of the word "Anthony's" before the two words in question does not protect appellee. The essential violation is still present; that an average customer could be led by the similarity into using the services of appellee rather than appellant's. *Thomson-Porcelite Co. v. Harad,* 356 Pa. 121, 51 A.2d 605 (1947).

In *Thomson-Porcelite* the Supreme Court of this Commonwealth adopted the more elegant test for confusing similarity given in the Restatement of Torts First, § 729.

In determining whether the actor's designation is confusingly similar to the other's trade-mark or trade-name, the following factors are important: (a) the degree of similarity between the designation and the trade-mark or trade-name in (i) appearance; (ii) pronunciation of the words used; (iii) verbal translation of the pictures or designs involved; (iv) suggestion; (b) the intent of the actor in adopting the designation; (c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other; (d) the degree of care likely to be exercised by purchasers.

■ Without belaboring the obvious, it is apparent that several of those factors are present in the case before us.[6]

Thus neither of the elements necessary under *Stroehmann* for a registrant to receive the protection of a trademark is present here.

5. In that case the marks "Goebels" and "Goblet" were held to be deceptively similar. The degree of similarity is certainly exceeded here.

6. The intent to deceive is not an indispensable factor. *Koolvent Metal Awning Corp. of America v. Price,* 368 Pa. 528 at 533, 84 A.2d 296 at 299 (1951).

## B.

■ Besides not meeting either of the elements prescribed in *Stroehmann,* there is another independently adequate basis to deny appellee the benefit of his first registration. This is, quite simply, that the words "Shear Perfection" were incapable of becoming a valid trademark through registration.[7]

Descriptive, geographical and generic words, as well as words of common or general usage belong to the public and are not capable of exclusive appropriation by anyone.

*Koolvent, supra,* 368 Pa. at 532, 84 A.2d at 298. See also *Quaker State Oil Refining Co. v. Steinberg,* 325 Pa. 273 at 277, 189 A. 473 at 475 (1937) and *Zimmerman v. Holiday Inns of America,* 438 Pa. 528, 266 A.2d 87 at 90 (1970).

While it has been established that appellee has no claim to the mark by virtue of his first registration, it still remains to be seen whether appellant himself has any protected interest.

## II.

■ A second user with an invalid registration has no rights in the mark. How then may the first user, appellant here, establish a right in the mark?

■ The primary method, of course, is through registration. Since appellant's was not the first registration, it is ineffective.[8] There are however two other methods of establishing a legal right to the mark; for even though material may be unregistered[9] or unregistrable[10] a mark does not lose its common law protection.

7. As will be seen below, while these words could not become a valid trademark through registration, they could become a protected, valid trademark by acquiring a secondary meaning.

8. Of course, as we have noted, in this particular case even a first registration would not have been valid.

9. *Stroehmann, supra,* 331 Pa. at 97–8, 200 A. at 98.

10. 73 P.S. § 22(b). (Though repealed Dec. 16, 1982, it is the statute applicable to these proceedings.) The current trademark law contains a similar provision. 54 Pa.C.S. § 1126.

## A.

■ One such form of common law protection is activated when the mark has acquired a secondary meaning. *Thomson-Porcelite, supra,* 356 Pa. at 124, 51 A.2d at 606–7; *Koolvent, supra,* 368 Pa. at 532–3, 84 A.2d at 298; *Quaker, supra,* 325 Pa. at 278–80, 189 A.2d at 475–76.

Secondary meaning is commonly defined as follows: The term "secondary meaning" encompasses the situation where people in the trade or purchasing public come to think of a word or name as standing for the business of a particular owner ..."

*Zimmerman, supra* 438 Pa. at 535, 266 A.2d at 90. See also *Miscellaneous, Inc. v. Klein's Fashions, Inc.,* 452 Pa. 62 at 64, 305 A.2d 22 at 24 (1973). If secondary meaning is found, the holder is entitled to both injunctive relief and damages. *Id.*

The chancellor, using this definition found that appellant had not established a secondary meaning. As this is, at root, a finding of fact, our scope of review is quite limited. "... in equity cases, findings of fact, approved by a court en banc have all the force and effect of a jury verdict." *Id.* The appellant can not get relief by this route.

## B.

■ There is another method by which appellant can establish his claim, albeit with more limited redress. This other legal theory does not require a fact-finding that the public was, in fact, deceived.

It is not necessary that the public should be actually deceived in order to afford a right of action. [i.e. injunctive relief] All that is required is that the infringement should have a tendency to deceive. The gist of the action is the intent to get an unfair benefit from another's trade. Actual deception of the public is only material to the question of damages.

*Shaw & Co. v. Pilling & Son,* 175 Pa. 78 at 87, 34 A. 446 at 447 (1896). See also *Koolvent, supra,* 368 Pa. at 533–4, 84 A.2d at 299; *Thomson-Porcelite, supra,* 356 Pa. at 125, 51 A.2d at 607.

Thus, if appellant could establish that the similarity in names would have a tendency to deceive, he would be entitled to injunctive relief.[11]

 The "possibility that purchasers will be misled is not enough." *Koolvent, supra,* 368 Pa. at 534, 84 A.2d at 299. That tendency to deceive and not merely the possibility was, we hold, present here.[12]

Accordingly, appellant is entitled to an injunction against the use by appellee of the mark "Shear Perfection." It also follows from the above that he is not entitled to an accounting.

Accordingly, the order of the Chancellor denying appellant's petition for an injunction is reversed but affirmed as to the accounting.

11. He would not, however, be entitled to an accounting, since such actual deception goes to damages and, as we have seen, the Chancellor concluded that actual deception was not shown.

12. In *Miscellaneous,* supra, 452 Pa. at 64, 305 A.2d at 24, this Commonwealth's Supreme Court wrote:

> While it is true that, in equity cases, findings of fact, approved by a court en banc have all the force and effect of a jury verdict, if they are supported by adequate evidence and ordinarily will not be disturbed on appeal, we do not believe that the evidence in the instant case is sufficient to establish the "secondary meaning" required to enable plaintiff to prevail.

(citation omitted). The situation before us is the reverse of that in *Miscellaneous.* There the trial court found that there was a secondary meaning and on appeal that was reversed. Here, the trial court found that there was no secondary meaning and we reverse.